665 F.2d 1168
 26 Fair Empl.Prac.Cas. 1156,
26 Empl. Prac. Dec. P 32,082, 214 U.S.App.D.C. 350
 Freda C. CLARK
v.
John O. MARSH, Jr., Secretary of the Army, Appellant,
Robert L. Nelson, Assistant Secretary of the Army (Manpower
and Reserve Affairs), Department of the Army, et al.
 No. 80-1680.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 18, 1981.
Decided Sept. 2, 1981.
 
 Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 77-1001).
 Marleigh D. Dover, Atty., U. S. Dept. of Justice, with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and Robert E. Kopp, Atty., U. S. Dept. of Justice, Washington, D. C., were on the brief, for appellant.
 Patricia J. Barry, Washington, D. C., for appellee.
 Before TAMM, Circuit Judge, HOMER THORNBERRY,* Senior Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.
 Opinion for the court filed by Circuit Judge TAMM.
 TAMM, Circuit Judge:
 
 
 1
 In this appeal the Secretary of the Army challenges certain aspects of an award made by the United States District Court for the District of Columbia to a Title VII plaintiff. After reviewing that challenge, we conclude that the district court's decision to award plaintiff relief for the period subsequent to her retirement was not erroneous. That decision is therefore affirmed. We find, however, that in certain other respects appellant's challenge has merit. We therefore remand this case to the district court for modification of its award in accordance with this opinion.
 
 
 2
 * Freda C. Clark began her career with the Army in 1950 as a clerk-typist. She subsequently advanced to the position of principal assistant to the Director of the Office of Employment Policy and Grievance Review (OEPGR), attaining a GS-13 level in 1962. Thereafter, Clark elected to channel her advancement opportunities through the Army's recently instituted Career Program for Civil Personnel Administration (Career Program), a merit placement and promotions program for professionals in the 200 series. From 1972 to July 1977, Clark actively pursued various promotions and lateral transfers through the Career Program. During that period, however, she received only one permanent promotion: selection by her immediate supervisor as an Employee Relations Specialist, a GS-14 level position in which she acted as Deputy Director of OEPGR.
 
 
 3
 In December 1976, following the death of then-Director James Bage, Clark became Acting Director of the OEPGR. While in that capacity she received a temporary promotion to the GS-15 level, and performance ratings of "outstanding" and "satisfactory" at the GS-14 and GS-15 levels, respectively. She did not receive a permanent promotion to the Director's position, however, despite her performance ratings and her substantial supervisory experience. That appointment went instead to Holly Hemphill, an employee of the Federal Labor Relations Council and a recent law school graduate with no supervisory experience. Four days after Hemphill's appointment was announced, Clark retired.
 
 
 4
 In June of 1977, Clark brought this Title VII action, alleging that defendants had unlawfully deprived her of opportunities for certain training, promotions, and lateral developmental transfers on the basis of her sex and her activities in the OEPGR.[1] After trial of this action, the district court issued a detailed statement of its findings of fact and conclusions of law. Clark v. Alexander, 489 F.Supp. 1236 (D.D.C.1980). In its statement the court concluded that plaintiff had been subjected to disparate treatment and disadvantaged by employment practices having disparate impact.[2] It found that the Career Program was plagued by "pervasive systemic defects" directly affecting plaintiff and other OEPGR staff members participating in the program.[3] Id. at 1246. The court also found that the dearth of referrals plaintiff received after 1972, plaintiff's outstanding employment record, and the existence of three positions for which plaintiff had been qualified but not selected, when considered in light of the systemic deficiencies noted above, indicated clearly that plaintiff had been subjected to disparate treatment. Id. at 1247. For these reasons, the court concluded that plaintiff had fully satisfied her statutory burden of proof.
 
 
 5
 On the basis of these findings, the court ordered that defendant offer plaintiff a promotion to a GS-14 level position effective as of November 20, 1972, and a promotion to the position of Administrator, GS-201-15 (or a position of comparable status, seniority, and pay), retroactive to September 29, 1974. If plaintiff declined these offers, she was to receive the difference between the amount she had already received and that which she would have received had she accepted those offers. The relevant payment period was to extend up to and including the date the offers were actually made. Finally, defendant was instructed to pay plaintiff the amount she would have received from the date of her retirement to the date of defendant's compliance with the court's order, reduced by the amount of annuity payments plaintiff had already received. Id. at 1248.
 
 II
 
 6
 On appeal the Secretary alleges no error in the district court's findings of discrimination. Appellant does, however, challenge the relief awarded plaintiff in three respects. He first contends that the court failed to provide properly for a set-off of plaintiff's actual or potential interim earnings. He then argues that the court erroneously awarded backpay and retirement annuities for the same time period. Finally, appellant claims that because the court did not find that Clark was constructively discharged, she is not entitled to the job offer and backpay ordered for the period subsequent to the date of her retirement.
 
 
 7
 The merits of appellant's first two contentions are readily apparent. As appellee concedes, the statute which permits the district court to award plaintiff affirmative relief provides, at the same time, that "backpay otherwise allowable" shall be reduced by "(i)nterim earnings or amounts earnable with reasonable diligence by the person ... discriminated against ...." 42 U.S.C. § 2000e-5(g) (1976). The district court was therefore obligated to provide in his award for an appropriate set-off. Similarly, appellee acknowledges that Title VII does not authorize the "double recovery" afforded plaintiff by the district court's award of retroactive retirement annuity payments and backpay for the same time period. As appellant points out, the statute does not contemplate placing plaintiff in a better position than she would have been in absent discrimination. For these reasons we remand this case to the district court so that it may reduce its backpay award by the amount of interim earnings it shall determine, and eliminate from its award the retirement annuity payment for that period for which backpay has been contemporaneously ordered.
 
 
 8
 Appellant's third contention requires more extensive consideration. Appellant argues that Clark was not entitled to relief for the period subsequent to her retirement unless she proved that she was constructively discharged from her employment. It notes that plaintiff alleged no cause of action for constructive discharge, that the parties presented conflicting evidence on the issue, and that the district judge made no explicit finding that plaintiff's retirement was involuntary. Absent such a finding, appellant contends, the court's award of relief for that period was erroneous.
 
 
 9
 We readily agree that plaintiff's recovery for the period subsequent to her retirement must rest upon proof that she "was the responsible agent in (her) own termination." Williams v. Boorstin, 663 F.2d 109, at 119 (D.C.Cir.1980); 23 Fair Empl. Prac. Cas. 1669, 1676 (BNA). We do not so easily concede, however, the merits of appellant's argument regarding the consequences of the district court's failure to make an explicit finding of constructive discharge. Instead, we believe that argument must be properly tested by a two-step inquiry. In that inquiry, we must first decide whether the district court's failure precludes review or mandates reversal. If that failure does not itself require reversal, we must then determine whether the district court's other findings, when considered in conjunction with the record, adequately support the relief awarded.
 
 
 10
 With regard to the first step, we note that a district court is required by Rule 52(a) of the Federal Rules of Civil Procedure to make findings of fact and conclusions of law "in all actions tried upon the facts without a jury...." Fed.R.Civ.P. 52(a). This requirement is explained, in part, by the fact that compliance therewith aids appellate review, affording appellate courts "a clear understanding of the ground or basis" of the district court's decision. 9 C. Wright & A. Miller, Federal Practice And Procedure § 2571 at 679 (1971). For this reason, failure to comply with the rule's requirements may lead the reviewing court to vacate the district court's judgment and remand for appropriate findings. The reviewing court is not required, however, to take such action; lack of compliance with Rule 52(a) does not eliminate the jurisdictional basis for appellate review. Davis v. United States, 422 F.2d 1139, 1142 (5th Cir. 1970). Instead, an appellate court may elect to review the trial court's decision if "a complete understanding of the issues may be had without the aid of separate findings." Swanson v. Levy, 509 F.2d 859, 861 (9th Cir. 1975). We believe that in this case a "complete understanding" of the constructive discharge issue is afforded by the record and by the district court's other, detailed findings. We therefore conclude that the district court's failure to find constructive discharge does not itself require either reversal or remand.[4]
 
 
 11
 Appellant's failure to obtain relief at this first step does not, of course, preclude its success at the second. To sustain this portion of the district court's award, we must still agree that Clark was, in fact, constructively discharged. The courts join in stating that a "finding of constructive discharge depends on '(whether the employer) deliberately made * * * working conditions intolerable and drove (the employee) into "an involuntary quit." ' " Retail Store Employees Union Local 880 v. NLRB, 419 F.2d 329, 332 (D.C.Cir.1968), quoting NLRB v. Tennessee Packers, Inc., 339 F.2d 203, 204 (6th Cir. 1964). See, e.g., Thompson v. McDonnell Douglas Corporation, 552 F.2d 220, 223 (8th Cir. 1977); Young v. Southwestern Savings and Loan Association, 509 F.2d 140, 144 (5th Cir. 1975); Muller v. United States Steel Corporation, 509 F.2d 923, 929 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Satisfaction of that standard, in turn, depends upon its application in the specific circumstances of each employment discrimination situation. This court has not previously addressed the constructive discharge issue in a Title VII context. Thus, proper application of the standard to these circumstances requires brief reference to the case law of other federal courts.
 
 
 12
 Although scarcely uniform, that case law does indicate a general reluctance to predicate a finding of constructive discharge upon the fact of discrimination. In Muller v. United States Steel Corporation, 509 F.2d 923 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975), for example, plaintiff alleged that he had not been promoted to a particular position because of his Spanish-American origin. Plaintiff further alleged that this discrimination and an unfavorable reassignment created "intolerable" working conditions which rendered his subsequent resignation involuntary. The court agreed that defendant's actions violated Title VII. It rejected plaintiff's claim of constructive discharge, however, concluding that there was "a dearth of evidence to show a deliberate effort to make things difficult for the employee so as to bring about his separation." Id. at 929.
 
 
 13
 A similar attempt to premise a finding of constructive discharge upon a finding of discrimination was rejected by the Fifth Circuit in Bourque v. Powell Electrical Manufacturing Company, 617 F.2d 61 (5th Cir. 1980). In that case plaintiff claimed that her employer's failure to provide equal pay for equal work constituted constructive discharge. As in Muller, the court held that the challenged conduct violated Title VII. Moreover, although the court applied a test less stringent than that utilized in Muller,[5] the same result followed-the confirmed discrimination was itself an insufficient predicate for a finding of constructive discharge. In reaching this conclusion, the court found that "society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships." Id. at 66. A Title VII plaintiff must, therefore, "mitigate damages by remaining on the job" unless that job presents "such an aggravated situation that a reasonable employee would be forced to resign." Id. Because discrimination manifested in the form of unequal pay cannot itself constitute such an aggravated situation,[6] and because plaintiff offered no further evidence of other objectionable working conditions, the court concluded that a finding of constructive discharge could not be sustained. Id. Accord, Heagney v. University of Washington, 642 F.2d 1157, 1166 (9th Cir. 1981).
 
 
 14
 As these cases make clear, a finding that Clark was constructively discharged must be justified by the existence of certain "aggravating factors." Pittman v. Hattiesburg Municipal Separate School District, 644 F.2d 1071, 1077 (5th Cir. 1981). We believe that such factors were present in the circumstances of Clark's employment and retirement, and that the record and the district court's decision adequately reflect that presence. We therefore affirm the district court's award of reinstatement and backpay for that period subsequent to July 1977.
 
 
 15
 At the outset we note that these circumstances are unlike those of Muller or Bourque. Plaintiff does not claim only a single instance of nonpromotion, or even simply a period of nonpromotion. Instead she alleges, and the district court found, a continuous pattern of discriminatory treatment encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years. Moreover, unlike the plaintiff in Bourque, Clark did not knowingly enter a discriminatory environment. The district court explicitly found that Clark reasonably expected that her participation in the Career Program would provide numerous opportunities for advancement, and that she "vigorously pursued" such opportunities. 489 F.Supp. at 1240. That the expected advancement failed to materialize was not due to any deficiencies in plaintiff's qualifications, the court concluded, but to "pervasive systemic defects" in the program's operation. Id. at 1246-47. See note 3 supra.
 
 
 16
 We believe that these findings and conclusions provide the necessary context for consideration of Clark's retirement. By the time of the Hemphill appointment, plaintiff had been actively seeking advancement within the Career Program for eleven years. Despite an outstanding employment record, however, plaintiff had been "continuously spurned," 498 F.Supp. at 1245, obtaining in that period only one permanent promotion. In addition, her informal efforts to obtain relief were largely ignored, while her formal administrative charges, filed three years previously, had similarly failed to produce corrective action.[7] Plaintiff was thus essentially locked into a position from which she could apparently obtain no relief.
 
 
 17
 It is significant, moreover, that the promotion plaintiff sought immediately prior to her retirement was that of Director of the OEPGR. Plaintiff had been Deputy Director of the OEPGR for three years and Acting Director for over a year. As Deputy Director she had on many occasions managed the office during the Director's absence and had been commended for her performance. See, e.g., Letter from James W. Bage to Freda C. Clark (May 28, 1974) (filed Nov. 13, 1978). As Acting Director, plaintiff's performance at the GS-14 level was rated "outstanding," while her performance at the GS-15 level earned a rating of "satisfactory." 489 F.Supp. at 1244. Despite these favorable ratings and plaintiff's substantial supervisory experience, however, defendant selected as Director a recent law school graduate with no supervisory experience.
 
 
 18
 Plaintiff later explained why this particular action provoked her resignation:
 
 
 19
 Q. To get back to my question. What were your thought processes in relationship to retiring?
 
 
 20
 A. Psychologically I was not ready to retire and I hadn't planned on it. I had hoped that I would get the job. I had hoped that I would get appropriate consideration and I don't think I did.
 
 
 21
 Q. Because you didn't get the appropriate consideration you decided to retire?
 
 
 22
 A. I was embarrassed. People all over the world knew Mr. Bage (OEPGR Director) had died. They knew I had been acting in that job.... And I felt that people with whom I had contacts all over the world in other agencies were expecting me to get the job. What could I tell them? I was embarrassed and humiliated. I felt I had been placed in a position where I had no other alternative but to retire and felt the Department of the Army officials knew this and that this is what they wanted me to do.
 
 
 23
 Deposition of Freda C. Clark at 80 (Nov. 17, 1978); Joint Appendix (J.A.) at 66.
 
 Plaintiff further testified at trial:
 
 24
 Q. Now, when Mrs. Hemphill was put into the position of Director of OEPGR Office, is it at that time that you decided to take your retirement?
 
 
 25
 A. What else could I do? I mean, that was the final blow. I just-.
 
 
 26
 Q. Did you want to retire at that time?
 
 
 27
 A. No. No.
 
 
 28
 Q. Now, having testified that you did not want to retire, can you tell the Court exactly why you did do so?
 
 
 29
 A. Well, I felt that I had worked in that office so many years, and I felt that I was certainly better qualified than anyone in the Army for that job, and that it was just unfair for them to announce that job and go outside and bring in another woman, who was not nearly so well qualified, with no experience in the kind of work at all.
 
 
 30
 Q. And was it also a result of the culmination of other experiences of your attempts-
 
 
 31
 A. I was just no longer capable of fighting. I just had to give up. What else could I do?
 
 
 32
 Trial Transcript (Tr.) of June 4, 1979 at 211-12; J.A. at 76-77 (testimony of Freda C. Clark).[8]
 
 
 33
 We find that the historic discrimination to which plaintiff had been subject, her repeated but futile attempts to obtain relief from that discrimination, and the predictable humiliation and loss of prestige accompanying her failure to obtain this particular position constitute the "aggravating factors" required by Bourque. We therefore conclude that appellant deliberately made Clark's working conditions intolerable and drove her into "an involuntary quit." Retail Store Employees, 419 F.2d at 332.
 
 CONCLUSION
 
 34
 Because we find that the record and the trial court's decision adequately support a finding of constructive discharge, we affirm that portion of the district court order awarding relief for the period subsequent to Clark's retirement. Other portions of that order require modification, however, and we remand to the district court so that it may determine the amount of plaintiff's interim earnings to be set off against the court's award of backpay, and so that it may eliminate the order to pay plaintiff retirement annuities for that period for which backpay has also been awarded.
 
 
 35
 It is so ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976)
 
 
 [1]
 The statutory basis for Clark's complaint was the prohibition in Section 717(a) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16(a) (1976), against employment discrimination in public service. As the district court explained, this prohibition encompasses retaliation for participation in Equal Employment Opportunity programs. Clark v. Alexander, 489 F.Supp. 1236, 1245 (D.D.C.1980). EEO duties within the Department of the Army are discharged by its Office of Employment Policy and Grievance Review (OEPGR)
 
 
 [2]
 As the district court explained: "Disparate impact involves 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.' " Clark v. Alexander, 489 F.Supp. at 1246, quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 n.15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977). "Disparate treatment exists when an employer treats some individuals less favorably than others because of their race, color, religion, sex, or national origin." Id., citing Teamsters, 431 U.S. at 335 n.15, 97 S.Ct. at 1854
 
 
 [3]
 The district court found that the regulations purportedly governing the selection process under the Career Program were "flagrantly violated." 489 F.Supp. at 1246. The court also determined that OEPGR staff participating in the program were subject to systemic discrimination because "the personnel who controlled promotions were often the subject of EEO complaints and findings of discrimination by OEPGR staff." Id
 
 
 [4]
 Appellant's claim that plaintiff failed to allege constructive discharge either in an administrative charge or in her amended complaint does not require a different result. As the court in Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir. 1980), observed: "The trial court has the authority to award appropriate relief dictated by the evidence, even though it may not have been sought in the pleadings." To the extent that appellant implies that by failing to file an administrative charge regarding her nonselection as Director of OEPGR plaintiff failed to exhaust her administrative remedies, we note that plaintiff had, prior to filing her initial complaint, brought an administrative charge, alleging a pattern of discriminatory treatment on the basis of her sex and her participation in the EEO process. Following her nonselection for the position of Director of OEPGR, plaintiff filed an amended complaint in which she charged that the nonselection was an additional incident of discrimination. Because that discrimination was "reasonably related" to the allegations of plaintiff's administrative charge, we find no impediment to our jurisdiction. Compare Ong v. Cleland, 642 F.2d 316 (9th Cir. 1981)
 
 
 [5]
 The Bourque court refused to apply a standard for constructive discharge which required that "the imposition of intolerable working conditions ( ) be with the purpose of forcing the employee to resign." 617 F.2d at 65. Instead, the court held that a finding of constructive discharge requires a determination that " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " Id., quoting Rosado v. Santiago, 562 F.2d 114, 119 (1st Cir. 1977)
 
 
 [6]
 With regard to this conclusion, the court observed:
 While we by no means discount the discrimination Ms. Bourque may have faced, we simply do not believe that working for unequal pay under the circumstances presented here constitutes a condition of employment so intolerable that an employee is forced into involuntary resignation. The very fact that Ms. Bourque accepted the position under the conditions imposed belies such a contention.
 617 F.2d at 65.
 
 
 [7]
 The district court cited numerous instances in which plaintiff informally requested explanation and corrective action in her situation. See 489 F.Supp. at 1241-43. When these informal efforts failed, plaintiff filed a formal administrative complaint on November 20, 1974. In April, 1976, plaintiff filed charges of additional discrimination. In June of that year the EEO officer investigating plaintiff's complaints dismissed the charges made therein as untimely. That dismissal was affirmed by the Review Board, on different grounds, on May 6, 1977
 
 
 [8]
 Appellant disputes plaintiff's characterization of her decision to retire and indicates testimony to the effect that Clark was in fact "encouraged" to remain. See, e.g., Tr. at 411-12; J.A. at 82-83 (testimony of Joseph Bennett, supervisor of Clark). To the extent that appellant denies a conscious design to force Clark to resign, we note that an employer's subjective intent is irrelevant; appellant must be held to have intended those consequences it could reasonably have foreseen. See, e.g., Bourque, 617 F.2d at 65; Hayden v. Chrysler Corp., 486 F.Supp. 557, 563 (E.D.Mich.1980). In any event, we do not believe that a statement that plaintiff's services were still desired was itself sufficiently encouraging to require that Clark ignore the message apparent in defendant's refusal to promote her to the position of Director of OEPGR