**Dr. H. Allen ORSHAN, Plaintiff,**

v.

**Frank J. MACCHIAROLA; Board of Education of the City of New York, Defendants.**

**No. 79 CV 309(ERN).**

United States District Court, E.D. New York.

Sept. 7, 1983.

Frederic J. Gross, Mount Ephraim, N.J., for plaintiff (Alan Aslaksen, Haddonfield, N.J., of Counsel)

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York by Marion M. Schuman, Elissa Hutner, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff brought this civil rights action against the Board of Education of the City of New York, two of its Chancellors and one of its assistant Chancellors[1] alleging that their refusal to acknowledge his claim to tenure as a day high school principal violated his constitutional rights. On defendants' motion for summary judgment, this Court dismissed all but one of plaintiff's causes of action as legally deficient, leaving only the claim that he had acquired tenure by estoppel for further factual development. *Orshan v. Anker,* 489 F.Supp. 820 (E.D.N.Y.1980). At the close of discovery, this claim was again placed before the Court for summary judgment, this time by both parties. Concluding that defendants were indeed estopped from denying plaintiff tenure as a day high school principal, this Court ruled that plaintiff's right to procedural due process was violated when the Board of Education summarily demoted him to the rank and salary of an assistant principal. *Orshan v. Anker,* 550 F.Supp. 538 (E.D.N.Y.1982).[2]

---

1. The complaint as amended named former Chancellors Irving Anker and Frank J. Macchiarola as well as assistant Chancellor James Boffman as defendants. After plaintiff's claims under §§ 1985 and 1986 were dismissed, both sides agreed that neither Boffman nor Anker were proper parties to the action and they were dismissed. At trial plaintiff's claim against Chancellor Macchiarola for punitive damages was withdrawn.

2. In the second Order, the Court also denied plaintiff's motion to amend his complaint to reassert the previously dismissed causes of action. By an order dated November 24, 1982, the Court refused plaintiff's request for reconsideration of this portion of the decision.

The case went to trial before a jury on the question of damages.[3] After three days of hearings, the jury concluded that plaintiff had suffered economic losses in the amount of $38,000 and non-economic harm valued at $30,000. On the question whether the procedural due process violation proximately caused plaintiff to retire and incur future economic losses, the jury found for the defendants.

Both parties have timely moved for a new trial. F.R.Civ.P. 59(b). For their part, defendants claim that the damages awarded by the jury for mental anguish, humiliation and injury to professional reputation were not supported by sufficient evidence and must be set aside as a matter of law. Alternatively, they contend that the $30,000 is grossly excessive and should be vacated. Plaintiff, on the other hand, objects to the jury's ruling on the forced retirement issue. He complains that the Court ignored his aid in drafting the instructions on this issue and thus misinstructed the jury to his detriment. For the reasons stated below, the Court finds neither motion persuasive.

## DAMAGES

■ In reviewing defendants' motion to set aside the jury's verdict as contrary to the evidence, this Court is guided by the principles stated in *Bevevino v. Saydjari,* 574 F.2d 676 (2d Cir.1978). In *Bevevino,* the Court held that in passing on such a motion

[t]he trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal

principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

*Id.* at 684 (quoting 6A Moore's Federal Practice ¶ 59.08[5] at 59–160 to 59–161). Thus, even if the Court were to "characterize the evidence against plaintiff as 'overwhelming'" and conclude that a different result would have obtained had the case been tried to the Court, *id.* (quoting *Compton v. Luckenbach Overseas Corp.,* 425 F.2d 1130, 1133 (2d Cir.), *cert. denied,* 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970)), a motion for a new trial need not be granted unless the verdict is so erroneous as to constitute "a miscarriage of justice." *Id.*

■ Reviewing the record in a light most favorable to plaintiff, *Rodgers v. Grow-Kiewit Corp.-MK,* 535 F.Supp. 814, 816 (S.D. N.Y.1982); *Perfect Fit Industries v. Acme Quilting Co.,* 494 F.Supp. 505, 506 (S.D.N.Y. 1980), the Court cannot conclude that the jury's ruling on the non-economic harm issue was "seriously erroneous" or a "miscarriage of justice." Contrary to defendants' contention, the evidence provides ample support for the jury's conclusion that plaintiff had indeed suffered an injury to his professional reputation, a blow to his emotional well-being, and a loss in future career opportunities as a result of his summary demotion. Plaintiff himself testified that the demotion caused him great humiliation

---

**3.** At a pretrial conference on December 21, 1982, counsel for defendants raised for the first time the possibility that plaintiff's tenure claim was barred by the doctrine of res judicata. Having waited nearly three years to inform the Court of this potentiality, and after having made two motions for summary judgment (one of which relied on res judicata to bar one of plaintiff's claims), the Court ruled orally that the defense had been waived and would not be considered as grounds for reconsideration of the November 3, 1982 decision. Pursuant to the Court's published rule, leave to file such a motion was therefore denied. Nevertheless,

prior to trial, defendants' counsel formally moved for an order requesting leave to reargue the November 3 decision on res judicata grounds. After considering this motion and its supporting papers, the Court adhered to its prior conclusion that the defense had been waived, but also informed counsel that the defense itself was defective since the State court decisions, which purportedly formed the grounds for a res judicata defense, never expressly resolved the tenure by estoppel claim. Defendants have not challenged this ruling in their motion for a new trial.

and depression, a condition corroborated by the testimony of family members and co-workers. Moreover, he testified, as did his wife, that the demotion dashed any hope for advancement in the New York City school system, where he had worked for 30 years. He also testified that being demoted without a hearing made it nearly impossible for him to obtain employment elsewhere since he would be unable to explain why he was demoted after nine years as a tenured principal. This loss of hope left him deeply depressed and anxious about the future and made it difficult for him to continue in his position at school. Various witnesses supported this testimony.

Dr. Orshan's wife also testified that following the demotion Dr. Orshan was depressed and suffered bouts of sleeplessness over the loss in income. According to her testimony, the nearly $10,000 drop in annual income suffered by Dr. Orshan forced them to sell one of their two homes and relocate out of the metropolitan area. Dr. Orshan's daughter corroborated much of this testimony.

Viewing the above testimony in light of the trial as a whole, it seems clear that the jury's verdict was not patently erroneous but was instead "reasonably based on evidence presented at trial." *H.L. Moore Drug Exchange v. Eli Lilly and Co.,* 662 F.2d 935, 941 (2d Cir.1982) (quoting *Michelman v. Clark-Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1042 (2d Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976)). Defendants argue, however, that the testimony also showed that much of plaintiff's emotional distress emanated from the loss of his principalship in 1972, not from his subsequent demotion in 1978. While this is true to some degree, it does not necessarily undermine the jury's verdict. The jury could have found that the demotion exacerbated his emotional sufferings and independently injured his professional reputation and future career opportunities. The testimony surely supported such a finding, and at defendants' request the jury was instructed to carefully separate the two issues. The Court has no reason to believe that the jury failed in this task. Accordingly, defendants' motion to nullify their findings is denied.

■ Defendants' claim that the amount of damages is grossly excessive presents a more difficult issue. Generally, "[w]hen a plaintiff in a § 1983 action has established liability for a deprivation of civil rights, an award of compensatory ... damages ... is necessarily left to the discretion of the trier of fact in the absence of out-of-pocket or other loss or injury," *Manfredonia v. Barry,* 401 F.Supp. 762, 770 (E.D.N.Y.1974), citing *Stolberg v. Members of Board of Trustees, etc.,* 474 F.2d 485, 489 (2d. Cir.1973). When the fact finder is a jury the trial judge, of course, retains the power to set aside their verdict as excessive, but only if the Court conscientiously believes that the jury's verdict is so unreasonable "that it would be a miscarriage of justice to permit it to stand." *Dagnello v. Long Island Rail Road Co.,* 289 F.2d 797, 806 (2d Cir.1961), *quoted in Bevevino v. Saydjari, supra,* 574 F.2d at 688. Stated another way, a jury award "should not be disturbed unless the amount shocks the 'judicial conscience' or is so clearly excessive as to compel the conclusion that it is the result of passion or prejudice." *Perfect Fit Industries v. Acme Quilting Co.,* 484 F.Supp. at 509 (citing cases); *accord Garzilli v. Howard Johnson's Motor Lodges, Inc.,* 419 F.Supp. 1210, 1212–13 (E.D.N.Y.1976).

■ At first blush, the award of $30,000 seems large in relation to the wrong perpetrated. But the Court cannot say that it is so grossly excessive as to shock the conscience. As already noted, the evidence of harm to plaintiff's professional career was substantial, as was the testimony concerning his emotional injuries. Given the potential long-term nature of these injuries, the jury could have reasonably concluded that plaintiff's sufferings were real and substantial. Under these circumstances, the Court declines to substitute an alternative economic measure of harm, and defendants' motion must be denied.

## FORCED RETIREMENT

In arguing that this Court improperly handled the forced retirement issue, plaintiff first contends that the question of causation should never have been submitted to the jury. He claims that any breach of tenure constitutes a discharge as a matter of law entitling the employee, who retires rather than accept the demotion, to damages for loss of income. Thus, according to plaintiff, the only question for the jury in this instance was the actual extent of plaintiff's post-retirement economic losses.

■ Plaintiff's argument, however, misconstrues the law which has developed as to when an employee may quit or retire in response to his employer's illegal actions and recover the same damages he would have received had he actually been discharged. As the First Circuit has pointed out:

> [b]efore a constructive discharge may be found, entitling the employee to quit working altogether rather than accepting a transfer which he thinks is violative of his constitutional rights, the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

*Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977); *accord Clark v. Marsh,* 665 F.2d 1168, 1173–74 (D.C.Cir. 1981); *Heagney v. University of Washington,* 642 F.2d 1157, 1166 (9th Cir.1981); *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980); *see Muller v. United States Steel Corp.,* 509 F.2d 923 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975) (applying a similar but more stringent test). The rationale for this rule is quite simple:

> Unless the transfer is, in effect, a discharge, the employee has no right simply to walk out; he must accept the orders of his superior, even if felt to be unjust, until relieved of them by judicial or administrative action. Were this not so, a public employee would be encouraged to set himself up as the judge of every grievance; and the public taxpayer would end up paying for periods of idleness while the grievance was being adjudicated.

*Alicea Rosado v. Garcia Santiago,* 562 F.2d at 119. Thus, while a breach of tenure may in fact be a grievous wrong, a plaintiff must establish more than the breach itself in order to recover for the precipitous act of resignation or, as in this case, retirement. He must convince the trier of fact that the breach resulted in "such an aggravated situation that a reasonable employee would be forced to resign." *Bourque, supra,* 617 F.2d at 66, *quoted in Clark, supra,* 665 F.2d at 1173.

Plaintiff next contends that the charge itself was defective in failing to give examples of aggravating circumstances which would justify finding a constructive discharge. Specifically, plaintiff sought instructions allowing the jury to conclude that any humiliation or embarrassment resulting from a wrongful demotion would justify quitting one's job. Such an instruction was simply not warranted under the facts or the law applicable to this case.

The First Circuit's opinion in *Alicea Rosado, supra,* is again instructive:

> Humiliation usually justifies an unlawfully discharged employee's lack of mitigation efforts only in cases where the effort would involve almost daily, face to face dealings with the alleged wrongdoer or where the nature of the substituted job is unreasonably inferior to his prior position.

562 F.2d at 120 n. 4 (citing 11 Williston on Contracts § 1353, at 279 (3d ed. 1968)).

■ Neither of these situations was present here. Plaintiff was not required to face his antagonists every day; indeed there was no evidence that he ever confronted the individuals responsible for his demotion. Furthermore, despite his demotion, plaintiff continued to discharge the same duties he had performed prior to the demotion, thus effectively negating his claim that the humiliation he suffered as a result of the demotion actually caused him

to retire. Finally, and perhaps most importantly, plaintiff's own testimony and the testimony of his wife, daughters, cousins and colleagues demonstrated that he retired primarily because he believed the demotion would adversely affect his pension payments. Thus, while plaintiff produced enough evidence to demonstrate that he had suffered psychological harm as a result of the demotion, there was a complete absence of evidence to support a jury charge that would have allowed the jury to find that any emotional harm could proximately cause a forced retirement. Nevertheless, in an effort to give plaintiff every benefit of doubt, the Court did not exclude this factor from consideration by the jury but rather left the entire issue open. Under these circumstances, plaintiff's argument that the jury instructions were prejudicial is less than compelling.

■ In his final challenge, plaintiff claims that it was error to exclude evidence of incidents occurring prior to his demotion which he claims would have shown that he was driven to retire. Relying on the District of Columbia decision in *Clark v. Marsh,* *supra,* he contends that these incidents would have shown that he was subjected to "historic discrimination" by the Board of Education and was thus justified in retiring when the Board subjected him to the "final degrading act of demotion." Unfortunately, plaintiff's reliance on *Clark v. Marsh* is completely misplaced.

In *Clark,* the plaintiff filed a Title VII discrimination claim against the Department of the Army alleging that she had been subjected to a pattern of sexual discrimination which eventually prompted her to retire. The focus of the dispute was, of course, the pattern of discrimination and Ms. Clark's response to it. After reviewing the trial court record, the Court concluded that Ms. Clark acted reasonably when she retired rather than continue to suffer the humiliation of· not being promoted because of her sex. The Court reasoned that after 11 years of enduring such wrongful behavior and after making "repeated but futile attempts to obtain relief" any reasonable person would have quit rather than accept the ignominy of losing the supervisory position she was temporarily holding to a wholly inexperienced recent law school graduate.

Unlike *Clark,* the instant case does not present a series of unlawful discriminatory actions on the part of defendants. All of the incidents that plaintiff desired to show at trial were acts of defendants that this Court had ruled raised no claim of a constitutional nature, and which plaintiff's posttrial memorandum describes as merely "unfair." Whether they were or were not in fact "unfair," those incidents are wholly unrelated to the wrong which forms the basis of this lawsuit, namely the denial of procedural due process. Thus, even though the prior incidents may have greatly influenced plaintiff's retirement decision, they were not relevant on the question of damages in this case. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

## INJUNCTIVE RELIEF

■ In addition to his motion for a judgment notwithstanding the verdict, plaintiff also seeks an order directing the defendants to revise official records so as to reflect that he retired while serving in the rank and pay of a day high school principal. Defendants oppose this request insofar as it seeks to alter plaintiff's pension records. According to defendants, the award of $38,-000 for pre-retirement economic losses also included compensation for the decrease in the rate of plaintiff's pension payments (which resulted from his decrease in pre-retirement salary), thus granting the relief requested would double this portion of plaintiff's recovery.

The instructions to the jury, however, do not support defendants' construction of this award. The instruction on economic damages specifically limited the jury's consideration to *pre*-retirement economic losses. The jury was expressly instructed not to include in its verdict any compensation for future economic losses. The special verdict reinforced this mandate by asking "what

amount do you award plaintiff for economic losses prior to the date of his retirement?"

Given the clarity of the instruction, it is difficult to conclude that the jury ignored its mandate and awarded plaintiff monies for the decrease in pension payments that he suffered as a result of his unlawful demotion. Certainly without more than defendants' speculation about the jury's deliberations on this issue, this Court can only assume that they followed their instructions faithfully. Accordingly, the Court holds that plaintiff is entitled to judgment in the amount of $68,000 with interest from the date of retirement and an order directing the Board of Education, within thirty (30) days of the date hereof, to amend plaintiff's personnel records so as to reflect his status at retirement as that of a day high school principal, and to supply the New York City Teachers Retirement System with corrected payment records so that plaintiff's pension is appropriately readjusted.

Forms of proposed final judgment shall be submitted no later than twenty (20) days from the date hereof.

SO ORDERED.