902 F.2d 1009
 134 L.R.R.M. (BNA) 2367, 284 U.S.App.D.C. 183
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
MANUFACTURING SERVICES INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 89-1400.
 United States Court of Appeals, District of Columbia Circuit.
 May 24, 1990.
 
 Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 This case was considered on the record on petition for review of a decision of the National Labor Relations Board and on the briefs filed by the parties. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied and the Board's order is enforced.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 The petitioner challenges the NLRB's determination that it constructively discharged an employee by transferring her from a supervisory position in one division to a non-supervisory position in an unfamiliar division. We conclude that the Board's decision is supported by substantial evidence and, accordingly, we deny the petition for review and enforce the order of the Board.
 
 
 5
 Prior to the events that form the basis of this case, Patricia Stanley worked in the page rework division of petitioner's assembly plant. Stanley served as one of three "acting line leaders," which put her in a position to become a permanent line leader as the division expanded. In May 1986, Stanley, along with several co-workers, met with her supervisor to discuss rumors that the Company was hiring new employees at a higher wage than it paid current employees.
 
 
 6
 The day after the meeting, Stanley's supervisor informed her of his displeasure and stated that because of her leadership role at the meeting, she would either have to accept a transfer to the custom manufacturing line or resign immediately. Despite Stanley's objections that the custom manufacturing line was a "worse working environment," the supervisor explained that he intended to separate the "trouble-makers" and thereby prevent Stanley from engaging in "unionized activity" with the page rework employees. Later that morning, Stanley quit.
 
 
 7
 After a hearing, the Board found that the Company had violated Sections 8(a)(3) and (1) of the NLRA by transferring Stanley and making coercive threats in retaliation for Stanley's exercise of her Section 7 rights. The Board further determined that Stanley had been constructively discharged because a reasonable person in her position would have felt compelled to resign rather than accept the new position. Accordingly, the Board found that Stanley was entitled to reinstatement and backpay.
 
 
 8
 The Company argues that (1) the Board incorrectly applied the constructive discharge standard by failing to require that the new position be both "difficult and unpleasant" or "intolerably difficult"; and (2) the Board's finding of difficulty was not supported by substantial evidence. We find no merit in either claim.
 
 
 9
 First, relying upon EDP v. Medical Computer Systems, 284 NLRB No. 117 (1987), petitioner argues that for Stanley to prevail, she must show that her new position was both "so difficult and unpleasant that [petitioner] forced her resignation" (emphasis added). The Board formally acknowledged that this passage in EDP contained a misstatement, and it corrected this language in its decision below. Specifically, it stated:
 
 
 10
 Although EDP Medical did state the test for constructive discharge in the conjunctive, neither that case nor its antecedents were intended to be read as establishing a twofold test for conditions sufficient to create a constructive discharge.
 
 
 11
 295 NLRB No. 131.
 
 
 12
 We note that EDP itself expressed the test properly in an earlier passage. There it stated that a constructive discharge occurs where "the burdens on the employee caused, and [were] intended to cause, a change in working conditions so difficult or unpleasant as to force the employee to resign." 284 NLRB No. 117 (emphasis added). Likewise, all cases referred to in EDP recite the disjunctive standard, and EDP did not purport to change the existing standard. Accordingly, we find no merit in petitioner's attempt to hold the Board to a loose statement of the rule in a prior decision.
 
 
 13
 Alternatively, petitioner maintains that the Board erred in not requiring Stanley to show that the new position was "intolerably" or "unbearably" difficult or unpleasant before finding constructive discharge. This too lacks merit. As we have already noted in a different context, a literal interpretation of the term "intolerable working conditions" is misplaced in a constructive discharge analysis. Hopkins v. Price Waterhouse, 825 F.2d 458, 472 (D.C.Cir.1987). Indeed, it would be redundant for someone to have to show that the new working conditions were unpleasant and then show that they were "unbearably unpleasant." If "unbearable" were the ultimate standard, then there would be no reason for the preliminary test of difficult or unpleasant. The proper standard, as stated in EDP, is that the claimant need prove only "that the change in working conditions ... is so difficult [or] unpleasant that it forces resignation." 284 NLRB No. 117; see also Price Waterhouse, 825 F.2d at 472 ("it is sufficient if the employer simply tolerates discriminatory working conditions that would drive a reasonable person to resign").
 
 
 14
 Finally, the Company argues that even if Stanley needed to show only that the working conditions were so difficult as to force resignation, this finding is not supported by substantial evidence. We disagree. The ALJ expressly found that the new job was more difficult. He stated, "It is clear that, at least for Stanley, the work in custom manufacturing would have been unfamiliar, and therefore more difficult" and that "General Counsel has shown that the work in custom manufacturing was somewhat more difficult." Since the Company did not except to any of the ALJ's findings, those findings are binding on the Board and this court.
 
 
 15
 The record further demonstrates that the increased difficulty in work conditions was sufficient to cause a reasonable person in Stanley's position to resign. Not only would the work on the custom manufacturing line have been more difficult, but also Stanley would have been deprived of her supervisory status, segregated from her co-workers in the page rework division, and subjected to a hostile work environment in which she could not exercise her Section 7 rights.
 
 
 16
 On balance, we find that this combination of factors supports the Board's position. See Clark v. Marsh, 665 F.2d 1168 (D.C.Cir.1981). Although simply forcing someone to take on a new job that she is not trained for, but which she could perform adequately at some point, might not constitute a constructive discharge, the additional aspects of the transfer are compelling. Taken together, the new conditions were sufficiently onerous to support a finding of constructive discharge. Accordingly, we deny the petition for review and enforce the order of the Board.