Michelle L. ROBERTS, Plaintiff,

v.

The SEGAL COMPANY, Defendant.

No. CIV. A. 1:99CV00859.

United States District Court,
District of Columbia.

Dec. 11, 2000.

Michele A. Roberts, Rochon & Roberts, Washington, DC, Eric Steele, Law Office of Eric Steele, Washington, DC, for Plaintiffs.

Anne H.S. Fraser, Law Offices of Anne H.S. Fraser, P.C., Washington, DC, Mi-chael J. Prame, Groom Law Group, Char-tered, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's motion for summary judgment, plaintiff's opposi-tion thereto, and defendant's reply. Plain-tiff Michelle Roberts, an African American female, claims that defendant The Segal Company discriminated against her by paying her a lower salary than a white woman hired shortly before she was hired and retaliated against her after she com-plained about the disparity. Defendant argues that there can be no inference of discrimination because there were two dif-ferent secretarial positions available at dif-ferent salaries, the salaries were estab-lished before the race of any applicant was known, and the lower paying position was the only position available when plaintiff was interviewed. Moreover, defendant contends that plaintiff has failed to estab-lish an adverse employment action, which is required to establish a claim for retalia-tion. The issue before the Court is wheth-er the plaintiff has presented a prima facie case of discrimination and retaliation/con-structive discharge under Title VII. Upon consideration of the pleadings and the rec-ord before us, this Court concludes that plaintiff cannot prevail as a matter of law and therefore summary judgment is grant-ed as to all counts.

## BACKGROUND

In January 1996, defendant The Segal Company advertised with NRI employ-ment agency a job opening for a secretari-al position for Tom Harter and Victor Pfeiffer, two consultants employed by de-fendant. The last person employed in that position (the "Harter position") was paid an annual salary of $32,000. Defendant set the salary for the open position at $32,000 and advertised the job at that sala-ry. In January Lynn O'Shea became aware of the Harter position through the

NRI agency. Defendant did not immediately schedule an interview with O'Shea, but called her back in late March 1996. Defendant interviewed O'Shea on May 9, and again the following week. O'Shea was offered the Harter position at $32,000 on or about May 17, 1996.[1] O'Shea accepted the position immediately, gave her employer two-weeks notice, and began work on June 3, 1996.

Sometime in April or early May 1996, another secretarial position with David Blumenstein, who had recently become the head of the Washington D.C. office, Stacey Carter, and Ann Cooper (the "Blumenstein position") became available at The Segal Company. The Blumenstein position was advertised at an annual salary of $30,000. Plaintiff learned of this vacancy through an employment agency, which told her that there was one position (the Blumenstein position) available with defendant, at a salary of $30,000 per year. Roberts interviewed for the Blumenstein position on May 28, 1996.[2] Defendant offered plaintiff the position immediately and plaintiff accepted. Plaintiff began working with defendant on June 10, 1996, never having interviewed for the Harter position, which had already been filled at the time plaintiff was placed in contact with defendant. At the time plaintiff interviewed with defendant, there was only one available position—the $30,000 Blumenstein position.

Tammy White, the office manager who interviewed plaintiff, was terminated in August 1996. At some point thereafter, White informed plaintiff of the disparity between plaintiff's salary and O'Shea's salary. On September 27, 1996, plaintiff wrote a memo to Blumenstein and Rick Johnson, the acting office manager, to inquire why O'Shea was being paid $2,000 more per year than she was. This memo made no allegation of race discrimination. Having received no response, plaintiff wrote another memo on October 3, 1996, this time to Howard Fluhr, the President of The Segal Company. In this memo, plaintiff claimed for the first time that, given the lack of response to her concerns about the salary disparity, she believed the disparity was the result of race discrimination.

The next day, October 4, 1996, Johnson wrote a memo to plaintiff explaining that he and Blumenstein had been out of town, and that they would meet with her as soon as possible to discuss the matter. That meeting took place on October 15, 1996. Plaintiff was told at that meeting that the reason that she was paid less than O'Shea was the difference in their job responsibilities. She was assured that the difference had nothing to do with race, and that the salary was established without knowledge of the race of the person who would fill it. Johnson sent plaintiff a memo on October 16, 1996, reiterating what was said at this meeting. On October 21, 1996, plaintiff informed her superiors that she was leaving her position with The Segal Company. Plaintiff's last day at work was November 1, 1996.

Plaintiff contends that, in the period between her initial inquiry regarding her salary (September 27) and her resignation (November 1), she was subjected to hostility and was ostracized by her employer. Plaintiff cites "coldness," a failure to acknowledge her presence, the closing of office doors, and a lack of communication as examples of the treatment she experienced. Plaintiff alleges that this treatment began upon defendant's receipt of her September 27 memo and continued

---

1. Plaintiff claims O'Shea was offered the job on May 20. O'Shea gave two-weeks notice to her prior employer and was employed by defendant starting June 3, which means that notice would have been given by Friday, May 17. At any rate, whether O'Shea was offered the job on Friday, May 17 or Monday, May 20 is not material, for O'Shea was offered, and accepted, the job before plaintiff was interviewed on May 28.

2. As explained herein, the Court rejects plaintiff's claim that the defendant has admitted that plaintiff's interview took place on May 12.

until conditions became so intolerable that she gave notice of her resignation. There was no change in plaintiff's pay or job responsibilities after her October 3 allegation of racial discrimination, but according to the plaintiff, one task was reassigned from plaintiff to O'Shea after plaintiff announced on October 21 her intention to quit.

## LEGAL ANALYSIS

### I. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–250, 106 S.Ct. 2505 (citations omitted).

**3.** The issue of who set the salaries (Blumenstein or White) is not material, for the salaries

### II. Discrimination

■ In order to state a prima facie case of discrimination under Title VII, plaintiff must establish: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). Where there is no opportunity for an employer to discriminate, however, it is impossible to infer discrimination. *Cf. Daves v. Payless Cashways, Inc.,* 661 F.2d 1022 (5th Cir.1981) (where there is no job opening, plaintiff cannot prove that she suffered discrimination when defendant did not hire him).

■ The Court finds that the discrepancy in the salaries of the two positions at issue cannot support a inference of discrimination. It is undisputed that the salaries for these positions were established before the vacancies were advertised, and before the race of any applicant was known.[3] (Def. St. ¶¶ 3, 10, 11, 20; White Tr. 28–29, 74–75; Blumenstein Tr. 32–37.) Therefore, the applicants' race could not have been a factor in the salary differentials, and thus, there can be no inference of discriminatory intent.

■ Moreover, there is no genuine issue of material fact concerning the availability of the higher paying Harter position. The Harter position was offered to and accepted by O'Shea before plaintiff interviewed with defendant. (Def St. ¶¶ 14, 15, 16.) Although plaintiff has provided no evidence that she was interviewed on May 12, she relies on a statement by defense counsel at plaintiff's deposition to argue that defendant has "admitted" that the interview took place on May 12. (Roberts Tr. 84–85.) Defense counsel, in referring to a memorandum she did not have in front of her, stated that she had a memo which said

were established before the secretaries were interviewed.

plaintiff was interviewed on May 12. In fact, the memo to which counsel was referring states that plaintiff's interview was on May 28 (Def.Ex. N), which is confirmed by contemporaneous time records (Def.Ex. P). Moreover, May 12, 1996, was Mother's Day, a Sunday. (Def.Ex. O.) Defense counsel's inadvertent misidentification of the date during the deposition cannot constitute an admission that the interview took place on May 12, and therefore, the Court concludes that no reasonable juror could find that plaintiff was interviewed while the Harter position was still available.

As is clear, plaintiff did not apply for or interview for the Harter position. (Def.St. ¶¶ 12–16, 19.) Prior to her interview on May 25, plaintiff was informed that the only available position was the Blumenstein job and that the salary was $30,000. (Def.St.¶ 16.) Because plaintiff did not even apply for the Harter position, which was no longer available, discrimination cannot reasonably be inferred from the fact that O'Shea was offered a higher paying job.[4] Therefore, defendant's motion as to Count I is granted.

## III. Retaliation and Constructive Discharge

▮ Plaintiff also contends that she was retaliated against for her complaints alleging racial discrimination with respect to her salary and was constructively discharged. In order to establish a prima facie case of retaliation, plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Brody,* 199 F.3d at 452. To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences af-

fecting the terms, conditions, or privileges of employment." *Id.* at 457. "Mere idiosyncrasies of personal preference are not sufficient to create an injury." *Id. See also Jones v. Billington,* 12 F.Supp.2d 1, 13 (D.D.C.1997) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.") (citation and quotation marks omitted), *aff'd without op.,* 1998 WL 389101 (D.C.Cir. June 30, 1998). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (citation and quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268–69, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

▮ Plaintiff contends that she suffered retaliation because there was "coldness" toward her, her presence was not acknowledged, office doors were closed, and there was a lack of communication with her, all after her September 27 inquiry regarding the difference between her salary and O'Shea's. (Def. St. ¶ 40; Pl. St. ¶¶ 8,9; Roberts Tr. 399–403.) Plaintiff claims she was ostracized and alienated as a result of this behavior. (Pl.St.¶ 9.) However, the conduct alleged by plaintiff, even assuming it to be true, simply does not rise to the level of an adverse employment action. The fact that plaintiff believes she was getting the cold shoulder from her co-workers does not constitute a materially adverse consequence or disadvantage in the terms and conditions of her employment so as to establish an adverse personnel action. *Williams v. City of Kansas*

---

4. Because plaintiff has not established a prima facie case, the Court does not need to address the burden-shifting test established in *McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and plaintiff's allegations of a pattern of racial discrimination, as well as her contentions as to pretext, are irrelevant.

*City,* 223 F.3d 749, 754 (8th Cir.2000) ("[Defendant's] silent treatment [of plaintiff] is at most ostracism, which does not rise to the level of an actionable adverse employment action."); *Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir.1996) ("[M]ere ostracism in the workplace is not enough to show an adverse employment decision.").

Moreover, plaintiff testified that this treatment began on September 27, the date of her first complaint about her pay. (Roberts Tr. 399–403.) The September 27 memo made no mention of race discrimination, but simply complained about the gap between her salary and Ms. O'Shea's. (Def.Ex. C.) Given plaintiff's admission that the offensive behavior preceded her October 3 complaint of race discrimination, it is illogical to conclude that there was a causal connection between the alleged retaliation and her protected activity.

█ While plaintiff alleges generally that defendant withdrew assignments from her after she challenged the disparity in salaries (Pl.St.¶8), she only identifies one such instance (Def.St.¶40). Plaintiff claims that Howard Fluhr, the President of The Segal Company, was scheduled to come to the Washington D.C. office to meet with new employees, and that she was asked to handle a request for some arrangements related to this trip. (Roberts Tr. 367–68, 370–71, 401–03.) After plaintiff submitted her resignation, defendant had O'Shea handle any requests relating to the trip, and plaintiff was not permitted to attend the new employees meeting. *Id.* Even assuming arguendo this reassignment constituted an adverse personnel action, which it does not, no reasonable jury could conclude that it was caused by plaintiff's complaint since it occurred after she submitted her letter of resignation. Moreover, the reassignment of those administrative tasks does not rise to the level of a materially adverse consequence or material disadvantage in the

terms and conditions of plaintiff's employment. *Pierce v. Runyon,* 1997 WL 269631 at *4 (N.D.Ill. May 14, 1997) ("A transfer in duties involving no reduction in pay and no more than a minor change in working conditions does not constitute adverse action."), *appeal dismissed,* 142 F.3d 440 (7th Cir.1998); *cf. Brody,* 199 F.3d at 457 (holding a lateral transfer with no diminution of pay or benefits is not an adverse action absent "some other materially adverse consequences ... such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm"). Therefore, plaintiff cannot establish a prima facie case of retaliation.

█ Nor has plaintiff presented evidence from which a reasonable jury could find constructive discharge. To establish constructive discharge, plaintiff must show "not only discrimination, but also that the employer deliberately made working conditions intolerable and drove the employee into an involuntary quit." *Katradis v. Dav–El of Washington, D.C.,* 846 F.2d 1482, 1485 (D.C.Cir.1988) (citation and quotation marks omitted). Constructive discharge cannot be based solely upon evidence that one person "did not talk to ... or associate with" another. *Id.* Plainly, the type of behavior alleged by plaintiff cannot, as a matter of law, constitute a constructive discharge.[5] Moreover, the time frame in which plaintiff claims to have been the victim of retaliation is extremely short. Plaintiff did not make a claim of race discrimination until October 3, 1996. (Def. St. ¶¶ 28, 29; Def. Ex. D.) Just eighteen days later, she tendered her resignation. (Def. St. ¶ 31; Def. Ex. B.) Her work conditions were clearly not so intolerable as to force a reasonable person to quit her job, especially considering that she only endured the alleged treatment for less than three weeks.

As for the allegation that the disparity in her salary contributed to the construc-

---

**5.** The reassignment cannot be the basis for the constructive discharge claims as it followed plaintiff's announcement of her resignation.

tive discharge, this too is insufficient. Because plaintiff resigned when she did, her salary was not reviewed pursuant to the corporate policy, which required the review of employee salaries on an annual basis in April. (Def.St.¶ 24.) As plaintiff was hired in June 1996 and had resigned by November 1, 1996, she was not employed during the month of April, and thus, defendant cannot be faulted, in the absence of a discriminatory intent in setting the salaries, for not correcting any disparity in salaries. *See also Int'l Union, UAW v. Michigan,* 886 F.2d 766, 769 (6th Cir.1989) (mere failure to rectify wage disparities in the workplace is not actionable). Further, plaintiff's reliance on *Anderson v. Zubieta,* 180 F.3d 329 (D.C.Cir.1999), is misguided. In *Anderson,* the Circuit Court found that plaintiffs, black Panamanian and black Hispanic employees, established a prima facie case by demonstrating that they received a 15% lower salary, no equity package, and no vacation benefits for what was substantially the same work as the higher paid white employees. That this set of circumstances raised an inference of discrimination does not alter the fact that, in this case, because plaintiff never interviewed for the higher-paying position, which had already been filled, her lower wage does not give rise to an inference of discrimination. Similarly, in *Clark v. Marsh,* 665 F.2d 1168, 1174 (D.C.Cir. 1981), also cited by plaintiff, the Court noted that "[b]ecause discrimination manifested in the form of unequal pay cannot itself constitute such an aggravated situation" that would cause a reasonable person to resign, there must be "aggravating factors" in order to sustain a finding of constructive discharge. In *Clark,* the Court found that "deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years" were such aggravating factors. *Id.* Here, there is no evidence of discrimination, but even if there were, there are no aggravating factors that could reasonably cause plaintiff to resign after a period of about three weeks.

Plaintiff also cites *Moore v. KUKA Welding Sys.,* 171 F.3d 1073 (6th Cir.1999), for the proposition that retaliatory isolation of an employee who has alleged discrimination can constitute constructive discharge. In *Moore,* plaintiff's supervisor and co-workers would not talk to him, the supervisor instructed the other employees to move their tool boxes from the area where plaintiff worked so they would not talk to him, the employer removed the other two employees from plaintiff's department so that he was the sole remaining employee, and the janitor was told not to clean plaintiff's work area. The court found that while it was "a close question, ... day after day, week after week of isolation on the job and lack of communication would lead [plaintiff] to believe that he was no longer wanted" and could support a finding of constructive discharge. *Id.* at 1080–81. While 16 months of egregious treatment in *Moore* presented a close question of constructive discharge, plaintiff's allegations that for just over three weeks she experienced a cold and unfriendly work environment simply do not. No reasonable jury could find that defendant deliberately made plaintiff's working conditions so intolerable that a reasonable person would have been faced with no option but to resign.

Accordingly, defendant's motion as to Count II is granted.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to establish a prima facie case with respect to either race discrimination or retaliation. Accordingly, defendant's motion for summary judgment is granted. A separate order will accompany this opinion.