**Vicki Carol BRYANT, Plaintiff,**

v.

**R.L. BROWNLEE, Acting Secretary of the Army, Defendant.**

**No. CIV.A. 01–0064 JDB.**

United States District Court, District of Columbia.

June 4, 2003.

Vicki Carol Bryant, Silver Springs, MD, pro se.

Anthony Graham, Sr., Cherly F. Freeman-Watkins, Capitol Legal Group, Washington, DC, for plaintiff.

Pamela D. Huff, U.S. Attorney's Office, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

BATES, District Judge.

Plaintiff Vicki Carol Bryant ("plaintiff") brings this action for alleged discrimination with respect to her race, color, and age, and alleged retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Defendant R.L. Brownlee, Acting Secretary of the Army ("defendant"),[1] moves for summary judgment on all of plaintiff's claims. For the reasons stated below, the motion is granted.

### BACKGROUND

Plaintiff, an African–American female in her late 50s, began working for the Army Corps of Engineers as an attorney in the Louisville, Kentucky, District Office in 1989. Compl. ¶ 4. In 1992, she transferred to the New York District Office. *Id.* A year later, she transferred again, this time to the Corps Headquarters Real Estate Division in Washington, D.C. *Id.* Plaintiff remained at the Washington Headquarters until her resignation in January 2000. *Id.*

Plaintiff's tenure at the Washington Headquarters was a difficult one. Between February 20, 1998, and January 19, 2000, plaintiff filed five formal administrative complaints concerning alleged discrimination and retaliation. *Id.* ¶¶ 1–12. Ultimately, in January 2001, plaintiff filed a complaint with this Court, seeking relief for discrimination on the basis of race and color (Count I), retaliation for filing Title VII complaints (Count II), and age discrimination (Count III).[2]

Although the particular claims of plaintiff's complaint are asserted in a rather general manner (i.e., plaintiff does not allege separate counts for, e.g., hostile work environment or failure to promote), plaintiff sets forth nearly twenty pages of factual allegations to support her claims. In summary, plaintiff alleges: that she was denied opportunities for details, training, and promotions, Compl. ¶¶ 16, 18, 19(2), 19(7), 21, 25(11), 25(17), 29(5), 30, 32; that she was assigned unimportant, often non-legal tasks, *id.* ¶¶ 16, 18, 19(6), 22, 25(1); that she was unduly criticized by her supervisors, *id.* ¶¶ 23, 25(14); that she was harassed on and off the job by a white co-worker, who in one instance called plaintiff a "nigger," *id.* ¶ 17; that plaintiff's co-

---

**1.** R.L. Brownlee is substituted for the named defendant, former Secretary of the Army Thomas E. White, pursuant to Fed.R.Civ.P. 25(d)(1).

**2.** Plaintiff filed an Amended Complaint on February 6, 2001, which consisted solely of an amendment to the *ad damnum* in her original Complaint. In this Memorandum Opinion, the Court will cite to plaintiff's original Complaint, which contains her substantive allegations.

workers and supervisor ostracized her and avoided verbal contact with her, *id.* ¶¶ 19, 20; that plaintiff's business cards were stolen, her lumbar support pillow was hidden, and her computer was tampered with, *id.* ¶¶ 25(12), 25(18), 33; and that defendant did not allow plaintiff a full opportunity to pursue her discrimination complaints, did not attempt to settle her complaints in good faith, and did not accommodate her wish to have a representative present during meetings with her supervisor, *id.* ¶¶ 25(15), 26, 27, 34.

Defendant moved for summary judgment on, or in the alternative, dismissal of, plaintiff's claims on February 5, 2002. Pursuant to the requirements of Local Civil Rule 56.1, defendant filed a 116–paragraph Statement of Material Facts along with his motion. Plaintiff, in opposition, did not file a Statement of Genuine Issues as required by Local Civil Rule 56.1. Plaintiff later filed—without seeking leave to do so—a surreply arguing that the affidavit she had submitted functions to set forth her own version of the facts and to dispute defendant's version. Plaintiff's 26–paragraph affidavit, however, neither references the specific paragraphs in defendant's Statement of Material Facts nor "include[s] references to the parts of the record relied on." LCvR 56.1. Moreover, neither the statements in plaintiff's affidavit—many of which are conclusory—nor the exhibits she submitted cover the wide range of allegations set forth in her extensive complaint. Consequently, with respect to certain allegations, the only evidence before the Court is that submitted by defendant. Plaintiff's failure to comply with the Local Rules of this Court is inexcusable and has needlessly complicated resolution of the pending motion.

The Court held a hearing on defendant's motion on July 30, 2002. Based on the record before it, the Court now concludes that defendant is entitled to judgment as a matter of law on all of plaintiff's claims.

## ANALYSIS

### I. Legal Framework

#### A. Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may successfully support its motion by " 'informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.' " *Id.* (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on

which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

## B. The *McDonnell Douglas* Framework

A plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999); *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002). To make out a prima facie claim of retaliation, plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. *Brody,* 199 F.3d at 452.

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The employer's burden, however, is merely one of production. *Burdine,* 450 U.S. at 254–55, 67 L.Ed.2d 207. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.*

If the employer is successful, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." *Id.* at 147, 120 S.Ct. 2097. Thus, the trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual.'" *Id.* (quoting *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors ... includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49. As the D.C. Circuit has explained:

Assuming then that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available

to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc); *see also Waterhouse v. District of Columbia,* 298 F.3d 989, 992–993 (D.C.Cir.2002).

Although under the *McDonnell Douglas* framework the "intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). Indeed, once the defendant has proffered a legitimate non-discriminatory reason for its action, the burden-shifting *McDonnell Douglas* framework "disappear[s], and the sole remaining issue [i]s discrimination *vel non.*" *Id.* at 142–43, 120 S.Ct. 2097.

## II. Discrimination Based on Race, Color, and Age

Given the structure of plaintiff's complaint, it is not clear whether, in her discrimination claims, plaintiff seeks relief for particular alleged adverse actions or is merely amalgamating the alleged improper actions by defendant into a hostile work environment claim. Certainly the emphasis in plaintiff's brief suggests the latter, but the Court will initially consider whether plaintiff has a viable claim for relief based on specific alleged adverse actions.[3]

### A. Specific Alleged Adverse Employment Actions

### 1. Denial of Opportunities for Details, Training, and Promotion

In several places in her complaint, plaintiff alleges, or at least implies, that she was deprived of opportunities for details, training, and promotion. Discrete claims based on any of these allegations fail, however.

■ Plaintiff asserts, for example, that details were awarded to "two white counterparts on February 18, 1998, for 180 days and May–July 1998, for 90 days," Compl. ¶¶ 21, 25(1). Plaintiff is apparently referring to details taken by Bob Swieconek and Karen Bowen. But plaintiff was not qualified for the GS–15 detail given to Mr. Swieconek because she was only a GS–13, whereas Mr. Swieconek was a GS–14. Def.'s Mot., Ex. 19 at 221, Ex. 22 at 222. And, with respect to the detail awarded to Ms. Bowen, the only evidence in the record is that plaintiff was sent an email concerning the detail opportunity and did not express interest. Def.'s Mot., Ex. 22 at 225–27. Consequently, plaintiff cannot establish a claim with respect to these two details. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (plaintiff must show, *inter alia,* "that [s]he applied and was qualified for a job for which the employer was seeking applicants").

■ Plaintiff also complains of difficulties concerning her attempt to achieve a detail with the Organization of American States ("OAS"). But plaintiff concedes in her complaint that the Chief of the Corps of Engineers, General Joe Ballard, was supportive of her efforts. Compl. ¶ 19. Moreover, plaintiff's supervisor, Janice Howell, ultimately forwarded plaintiff's proposal for the detail to the Chief of Staff, who approved it. Def.'s Mot., Ex. 14 at 234–35. Thus, plaintiff cannot claim that she was improperly denied the OAS detail.

---

**3.** In the interest of efficiency, the Court will address only those allegations that might provide the strongest bases for a stand-alone discrimination claim.

■ Plaintiff refers in her complaint to a promotion given to a white realty specialist. Compl. ¶ 25(17). But plaintiff has conceded that she neither applied for the position nor wanted it. Def.'s Mot., Ex. 5 at 93. Thus any claim with respect to the promotion lacks merit. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■ Plaintiff also asserts in her complaint that "a young (28 years) white male attorney had been non-competitively assigned to back-fill a high profile GS–14/8 position." Compl. ¶ 30. But plaintiff does not contest defendant's assertion that the alleged detail did not involve a pay raise, a change in duty stations, or even a full-time employee at GS–14. *See* Def.'s Statement of Material Facts ¶ 93; Def.'s Mot., Ex. 44 at 555. As defendant explains, the assignment was merely an attempt to meet a temporary work load problem. Ex. 45 at 2007. Plaintiff's failure to receive the assignment thus does not involve the type of "objectively tangible harm" that is necessary to constitute an adverse employment action for Title VII purposes. *Brody,* 199 F.3d at 457.[4]

■ Plaintiff also complains that supervisor Laura Norman (who replaced Howell in July 1998) failed to approve and forward plaintiff's application to participate in the Executive Potential Program. However, "[t]o establish a prima facie case under the *McDonnell Douglas* framework, [plaintiff] must demonstrate ... that she and [a] similarly situated person were treated disparately." *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C.Cir.1999). Here, plaintiff has not identified any employee outside the protected classes who was approved for the Executive Potential Program. Thus plaintiff cannot make out a prima facie claim of differential treatment with respect to this program. *See Freedman v. MCI Telecomms. Corp.,* 255 F.3d 840, 845 (D.C.Cir.2001) (plaintiff's claim that he was denied intensive training given to other technicians failed where there was insufficient evidence to demonstrate that plaintiff was treated differently than his peers); *Richard v. Bell Atlantic Corp.,* 209 F.Supp.2d 23, 35 (D.D.C.2002) (plaintiff's claim for discrimination in training failed where plaintiff did not establish the existence of any similarly situated white employees who were given training in lieu of her); *Richard v. Bell Atlantic Corp.,* 167 F.Supp.2d 34, 41 (D.D.C.2001) (plaintiff failed to make out a prima-facie discriminatory denial-of-training claim where she did not identify any similarly situated employees of other races who were treated more favorably with regard to training); *Fain v. District of Columbia,* 568 F.Supp. 799, 804 (D.D.C.1983) (denying claim for discrimination in training where plaintiff did not show that she was treated differently from employees of other races with respect to training).[5]

---

**4.** In addition, plaintiff was out on leave when the staffing decision was made and had informed her supervisors that her therapist recommended that she not return to work. Def.'s Mot., Ex. 44 at 543–45, 574–75, Ex. 46 at 707. Thus defendant has a plausible reason for not assigning plaintiff to the temporary position, thereby shifting the burden back to plaintiff to show that the explanation is pretextual. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097. As discussed in Section II.B. below, plaintiff has come forward with virtually no evidence to indicate that race or age discrimination motivated any of the conduct of which she complains. Nor has plaintiff identified anything in the record to suggest that defendant's explanation is false.

**5.** Even if plaintiff could make out a prima facie claim of discrimination with respect to the Executive Potential Program, defendant proffers that Norman was concerned about approving plaintiff for 9 to 12 months of extended training outside the office when several other attorneys were already out for long periods, *see* Def.'s Mot., Ex. 30 at 507–508, and that Norman determined that the Executive Potential Program was not "the right

In sum, therefore, to the extent that plaintiff is bringing claims for specific instances of denial of training, detail, and promotion opportunities, plaintiff's allegations and evidence do not support even a prima facie case of discrimination.[6] Defendant is therefore entitled to judgment as a matter of law on these claims.

### 2. Work Assignments and Criticism of Plaintiff's Work

██ Plaintiff also asserts in her complaint that her work assignments were inconsequential and non-legal and that she was subjected to "nitpicking" criticism of her work and unwarranted admonishment for not completing assignments more promptly. Compl. ¶¶ 16, 18, 22, 23, 25(1), 25(14). However, " '[t]o establish an adverse personnel action in the absence of diminution in pay or benefits', plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment.' " *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C.Cir.2002) (quoting *Brody*, 199 F.3d at 457) (decision of district court reprinted with endorsement from D.C. Circuit panel). Indeed, "[a]n 'employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.' " *Id.* (quoting *Walker v. WMATA*, 102 F.Supp.2d 24, 29 (D.D.C. 2000)); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633(1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Brody*, 199 F.3d at 457 (must show "objectively tangible harm").

██ Here, plaintiff's allegations that she was given unimportant work and that her performance was criticized do not rise to the level of adverse employment actions. With respect to plaintiff's complaints about her duties, some Circuits have held that "changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997) (citing *Kocsis v. Multi–Care Mgmt.*, 97 F.3d 876, 886–87 (6th Cir.1996), and *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). Here, plaintiff's pay was not decreased, her performance was rated as "successful," Def.'s Mot., Ex. 53 at 1118–19,[7] and her grade

---

training at the right time," Def.'s Mot., Ex. 30 at 508–509, Ex. 31 at 510. Plaintiff has not introduced evidence to rebut or raise an issue of fact concerning defendant's reasons for denying approval for the Executive Potential Program, and, as discussed in Section II.B. below, there is no evidence in the record to indicate that animus based on race or age motivated this or any other alleged adverse decision with respect to plaintiff.

**6.** In addition to the particular detail, promotion, and training opportunities discussed herein, plaintiff alleges more generally that she was not afforded opportunities for advancement or details. Yet the testimony in the record is that the biggest impediments to advancement for GS–13 employees were hiring freezes and downsizing cuts. *See* Def.'s Mot., Ex. 32 at 255, Ex. 33 at 462. Moreover, plaintiff was presented with at least one detail opportunity that she declined. *See* Def.'s Mot., Ex. 28 at 181.

**7.** To extent that plaintiff is purporting to assert a claim that her "successful" rating—the second-highest one available, *see* Ex. 53 at 1118–19,—was "lower" than that usually awarded to her, Compl. ¶ 35, such a claim must fail. *See Brody*, 199 F.3d at 458 ("fully satisfactory" performance rating, where "ful-

remained the same. Moreover, the record does not indicate that plaintiff actually experienced a change in her job responsibilities of the magnitude that could give rise to a cause of action in this Circuit. *See Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C.Cir.2002). Indeed, the record shows that plaintiff was warned before she began working in the Washington Headquarters that the work would be "unchallenging and very narrowly focused." Def.'s Mot., Ex. 4 at 445. Although plaintiff asserts that this problem became worse over time, she has provided nothing other than conclusory statements in her affidavit to support that allegation. *See* Affidavit of Vicki Carol Bryant ¶ 10. Furthermore, defendant has introduced evidence showing both that other attorneys also felt that the work they were doing was non-legal and that plaintiff was given numerous important assignments. *See* Def.'s Mot. Supp. Summ. J. at 23–24; Def.'s Mot., Ex. 1 at 1661–62, Ex. 2 at 1605, Ex. 3 at 1458, 1472, Ex. 36 at 2163–75.

 Plaintiff's complaints about "nit-picking" criticism and criticism concerning the timeliness of the completion of her assignments also fail. Certainly employers are permitted to criticize an employee's work without giving rise to a federal cause of action. *Weigert v. Georgetown Univ.,* 120 F.Supp.2d 1, 17 (D.D.C.2000) ("Formal criticism and poor performance evaluations do not ordinarily constitute 'adverse actions.'"); *Brodetski v. Duffey,* 141 F.Supp.2d 35, 47 (D.D.C. 2001) ("Criticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action."). Moreover,

the evidence in the record demonstrates that Norman also criticized the work of plaintiff's co-workers. *See* Def.'s Mot., Ex. 1 at 1672, Ex. 2 at 1572–73, 1614–15.[8] In short, plaintiff's allegations concerning criticism, like her allegations concerning work duties, fall short of providing a basis for a discrimination claim.

## B. Hostile Work Environment

The real thrust of plaintiff's discrimination claims may be that she was subjected to harassing actions that amounted to a hostile work environment. Under plaintiff's theory, all of the specific adverse alleged actions discussed above appear to be relevant to this claim. Moreover, plaintiff alleges other, more typical harassing behavior: alleged non-sexual harassment by co-worker Todd Waldham on and off the job, including use of a racial epithet, Compl. ¶ 17; alleged ostracism by plaintiff's co-workers, *id.* ¶ 20; supervisor Howell's habit of taking telephone calls from others when plaintiff would attempt to meet with her in Howell's office, *id.* ¶ 19; Howell's alleged refusal to communicate with plaintiff except through hostile emails, *id.* ¶¶ 19(1), 20; alleged circulation of rumors concerning plaintiff's motivation for seeking the OAS detail, *id.* ¶ 19(3); alleged theft of plaintiff's business cards, *id.* ¶ 25(12); alleged hiding of plaintiff's lumbar support pillow, *id.* ¶ 25(18); alleged tampering with plaintiff's computer, *id.* ¶ 33; supervisor Norman's alleged request that plaintiff meet with her two days after she joined the department instead of waiting up to two weeks as with other employees, *id.* ¶ 22; Norman's alleged inference that plaintiff was a difficult person with whom to work, *id.* ¶¶ 22, 25(3); Norman's

---

ly satisfactory" is the middle of five grades, not an adverse employment action.).

**8.** Any claim concerning plaintiff's alleged exclusion from meetings, Compl. ¶ 18, is also

insufficient, as plaintiff has not established any "objectively tangible harm" arising out of any alleged exclusion. *Brody,* 199 F.3d at 457.

alleged 17–day delay in signing plaintiff's workmen's compensation forms, *id.* ¶ 29(6); the placement of plaintiff's name last on group emails, *id.* ¶ 25(10); Norman's instruction to plaintiff alone (and not to white employees) that it was common courtesy to give advance notice of leave that will be taken, *id.* ¶ 25(13); Norman's refusal to allow plaintiff to have a representative present during their meetings, *id.* ¶ 25(15); management's refusal to allow plaintiff sufficient time to prepare for a fact-finding conference and mediation concerning her discrimination complaints, *id.* ¶¶ 27, 34; and management's failure to conduct good-faith settlement negotiations concerning the discrimination complaints, *id.* ¶ 26. In addition to these allegations, which are pled in the complaint, plaintiff in her brief refers to an alleged discriminatory comment made by one of her co-workers, Lisa Ng, an Asian female. *See* Pl.'s Mem. Opp. Mot. Summ. J. at 4.

 Despite the sheer number of incidents of which plaintiff complains, her claim of a discriminatory hostile work environment contains at least one glaring defect: none of the allegations give rise to an inference of discrimination by defendant based on race, color, or age.[9] As the Second Circuit has explained:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimina-

tion. Otherwise, the federal courts will become a court of personnel appeals. *Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir.2002). Thus, "to sustain a hostile work environment claim ... [plaintiff] must produce evidence that she was discriminated against because of her [status]." *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 440 (2d Cir.1999) (claim for hostile work environment failed where only three of fifteen alleged incidents had racial overtones); *see also Farmer v. Cleveland Pub. Power,* 295 F.3d 593, 605 (6th Cir. 2002) ("[A] racial or sexual hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender."); *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345–46 (7th Cir.1999) (hostile work environment claim failed where insufficient evidence that alleged harassing behavior and comments were motivated by discrimination); *Jones v. Billington,* 12 F.Supp.2d 1, 12 (D.D.C. 1997) (hostile work environment claim failed where plaintiff had "not demonstrated that any of the conduct of which he complains was related to his race, or that his workplace was permeated with racially discriminatory behavior"); *Snowden v. Kelso,* Civ. No. 93–1393, 1996 WL 43549, at *3 (D.D.C. Jan.31, 1996) (unpublished) (claim for hostile work environment sexual harassment failed where no evidence that alleged harassing conduct was related to plaintiff's sex); *Brady v. KBI Sec. Serv., Inc.,* 91 F.Supp.2d 504, 508–09 (E.D.N.Y. 2000) (hostile work environment claim failed where alleged hostility was based on non-racial grounds); *Griffin v. Ambika*

9. The alleged harassing behavior fails to provide a basis for a claim for an additional reason as well: it is not sufficiently severe, pervasive, or extreme to rise to the level of an actionable hostile work environment. The Court's analysis in Section II.B. below concerning the absence of severe or pervasive harassing conduct applies with equal force to plaintiff's discriminatory hostile work environment claim and her retaliatory hostile work environment claim.

*Corp.*, 103 F.Supp.2d 297, 315 (S.D.N.Y. 2000) (same).

Here, with the exception of the incidents involving Todd Waldham and Lisa Ng, which the Court will discuss below, none of the events described in plaintiff's 21–page complaint have any racial or age-related overtones. They are completely neutral with regard to these protected classifications. Moreover, the record actually suggests that plaintiff's strained relations with her co-workers resulted from job-related tensions or personality conflicts. Ms. Ng, for example, testified that she stopped speaking with plaintiff because she "got tired of the constant meanness." Def.'s Mot., Ex. 2 at 1570. Mr. Waldham testified that plaintiff does not speak to him and he "basically ignore[s] her because normally she creates a hostile workplace environment that I would rather keep out of." Def.'s Mot., Ex.1 at 1627. Karen Bowen ascribed unpleasantness in the office to "what is going on in terms of work. People's expectations ... Everybody wants to get a promotion or something like that." Def.'s Mot., Ex. 3 at 1487. It goes without saying that plaintiff cannot state a claim with respect to her co-workers' or even her supervisors' dislike of her where it is based on factors other than discriminatory animus. *See Alfano*, 294 F.3d at 378 ("Alfano makes much of Brown's admission at trial that he disliked Alfano personally, but there is no indication that he disliked her because she was a woman."); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 791 (6th Cir.2000) (" '[P]ersonal conflict does not equate with discriminatory animus.' ") (quoting *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342–43 (6th Cir.1998)); *Cooper v. John D. Brush & Co.*, 242 F.Supp.2d 261, 270 (W.D.N.Y.2003) ("At most, plaintiff established that Pecora may not have liked him, but that is not enough."); *Griffin*, 103 F.Supp.2d at 315 (dismissing hostile work environment claim where "[i]t is more likely that the hostility plaintiffs encountered 'largely reflected a clash of personality rather than discriminatory animus' " (citation omitted)).

The allegations with respect to Mr. Waldham and Ms. Ng are insufficient to raise a genuine issue of material fact concerning the existence of an alleged discriminatory hostile work environment. According to plaintiff, Mr. Waldham placed a file cabinet in the passageway to her office, frequently walked into her work area, shouted at her in the office, intentionally sat in the same Metro car with her and stared at her, and once publicly mocked her for leaving work early. Def.'s Mot., Ex. 5 at 40–41; Pl.'s Ex. 2 at 40–45. During an encounter in the Metro station, Mr. Waldham also allegedly referred to plaintiff as a "nigger." *See* Def.'s Mot., Ex. 5 at 41. With respect to Ms. Ng, the particular allegation is that, in a phone conversation with a third party concerning opportunities for advancement in government, Ms. Ng stated that "black women were at the bottom. The white men were first, the white women were right up there with them. Other minorities, the black man, maybe, but the black female was at the bottom." Def.'s Mot., Ex. 5 at 37.

These incidents do not provide a basis for holding defendant liable for harassment. The principal alleged action by Mr. Waldham indicating hostility based upon plaintiff's status was his use of the word "nigger" in the Metro station. Yet plaintiff did not at the time inform her supervisor that Mr. Waldham had used any racial epithet, even though she submitted a memo to her supervisor complaining about some of Mr. Waldham's other behavior. *See* Def. Mot., Ex. 6, Ex. 5 at 41 (plaintiff conceding that she did not complain about the racial epithet because she "didn't want

it to be a racial issue").[10] Moreover, defendant properly responded to plaintiff's complaint by counseling Mr. Waldham in writing and reassigning him to a new desk away from plaintiff. *See* Pl.'s Mem., Ex. 2 at 44; Def.'s Mot., Ex. 9 at 1634–35. Defendant can therefore hardly be held liable for any racially-motivated harassment by Mr. Waldham. *See Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C.Cir. 1999) (an employer may be held liable for the harassment of one employee by a fellow employee only "if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action.").[11]

■ Nor can defendant base a hostile work environment claim on Ms. Ng's comments. As with plaintiff's allegation concerning Mr. Waldham's discriminatory remark, there is no indication in the record that plaintiff notified her supervisors of Ms. Ng's statements. *See* Pl.'s Ex. 4 at 52 (plaintiff conceding that she "didn't say anything about that because I was new, and I didn't want to start making waves"). Moreover, it is debatable whether Ms. Ng's comments could be construed as racially harassing. Indeed, these comments could reasonably be construed as laments about the presence of racial discrimination in government. In any event, a few discrete incidents of racially-discriminatory remarks by co-workers do not suggest that the entire catalog of facially neutral actions by plaintiff's employer were, in fact, racially motivated. *See Alfano*, 294 F.3d at 378 ("[F]our sex-related incidents, none of which were perpetrated by [plaintiff's supervisor], do not justify the inference that wholly different, facially sex-neutral incidents involving [the supervisor] were part of any campaign to harass [plaintiff] on the basis of her sex.").

■ In a final attempt to support her claim, plaintiff argues that an inference of race or age discrimination is raised by the fact that she was the oldest employee and the only African–American in her department. But this is too thin a reed to provide a basis for a reasonable fact-finder to conclude that the facially race- and age-neutral conduct at issue was motivated by improper discriminatory animus. In the absence of some greater indicator of race or age bias, the uniqueness of plaintiff's race and age in her workplace cannot substantiate a claim that plaintiff's workplace was "permeated with **discriminatory** intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation omitted) (emphasis added); *see also Neilley v. State Farm Ins. Cos.*, 202 F.3d 269, 1999 WL 1281717, at *5–6 (6th Cir. Dec.29, 1999) (unpublished) (the fact that plaintiff was the only African–American employee under her supervisor and one of the very few in the department was insufficient to establish that defendant's explanation for alleged discriminatory behavior was pretextual).[12] Accordingly, defendant is enti-

**10.** Plaintiff has submitted an excerpt of her testimony containing the allegation that Mr. Waldham once used the word "niggers" to refer to persons described in a newspaper article while on the phone in plaintiff's presence. *See* Pl.'s Mem., Ex. 2 at 43. Plaintiff does not refer to this incident in her complaint (or in her brief or her affidavit) and there is nothing in the record to indicate that she complained to her supervisors about it.

**11.** In her affidavit, plaintiff refers to "numerous complaints against Waldham from 1994 until 1997 of his constant harassment of Plaintiff." Bryant Aff. ¶ 17. But plaintiff has not submitted sufficient specific information concerning these other complaints and defendant's responses to raise a genuine issue of material fact as to whether defendant reacted appropriately.

**12.** The instant case is distinguishable from *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d

tled to summary judgment on plaintiff's claim for discriminatory hostile work environment.

## III. Retaliation

Plaintiff asserts in Count Two of her complaint that defendant retaliated against her for filing Title VII administrative claims. As with plaintiff's discrimination claims, it remains unclear whether plaintiff seeks relief for particular alleged adverse actions or is merely combining all of the alleged improper actions by defendant since the filing of plaintiff's first administrative complaint in February 1998 into a claim that defendant retaliated against her by subjecting her to a hostile work environment.

### A. Specific Alleged Adverse Employment Actions

■ To the extent that plaintiff's retaliation claim is based on specific alleged adverse employment actions, the claim must fail. As discussed in Section II.A.1. above, plaintiff cannot establish a claim based upon denial of detail, training, or promotion opportunities, either because she cannot identify a similarly situated employee who was treated differently than her or because she was not qualified for, did not express an interest in, or ultimately was approved for the specific opportunities at issue. And, as set forth in Section II.A.2., any claim based on criticism by plaintiff's employer or alleged changes in duties also fails because the evidence does not indicate that plaintiff suffered an adverse employment action. A showing of an adverse personnel action is, of course, equally required for a prima facie case of retaliation or discrimination. *See Brody*, 199 F.3d at 452.

### B. Hostile Work Environment

With respect to plaintiff's argument that she was subjected to a retaliatory hostile work environment, the Court notes as an initial matter that it is not clear whether such a claim is actionable in this Circuit. Under *Brown v. Brody*, a plaintiff asserting a claim for retaliation must establish that (1) he engaged in statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. 199 F.3d at 452. As in the case of a discrimination claim, in the retaliation context "[a]n 'employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.'" *Stewart*, 275 F.3d at 1134 (quoting *Walker v. WMATA*, 102 F.Supp.2d 24, 29 (D.D.C.2000)). The D.C. Circuit has not ruled on whether a hostile work environment or other cumulative retaliatory harassment can constitute an "adverse personnel action" for the purposes of a retaliation claim.

In some cases in this Court, judges have entertained claims for a retaliatory hostile work environment. *See, e.g., Singletary v. District of Columbia*, 225 F.Supp.2d 43, 62 (D.D.C.2002) (setting out elements for "hostile work environment claim based on retaliation"); *Brodetski*, 141 F.Supp.2d at 48 ("Hostile work environment claims more frequently accompany Title VII gender, race or national origin discrimination than retaliation claims.

---

1225 (D.C.Cir.1984). In that case, the D.C. Circuit upheld a jury finding that racial discrimination was present where plaintiff, defendant's only black employee, was "singled out for unique treatment in **all** aspects of her employment -from salary, to customer con-

tact, to her work station, to participation in staff meetings, to fringe benefits such as parking and keys" and the jury heard testimony that defendant's president found humorous an overtly racist joke told in his presence. *Id.* at 1233 (emphasis in original).

Nevertheless, there is little reason that a claim of hostile work environment should not be considered in cases of retaliation as well."); *Batson v. Powell,* 912 F.Supp. 565, 576 (D.D.C.1996) (considering, but denying based on lack of credible evidence of causation, claim for hostile work environment in retaliation for filing an administrative complaint). Most Circuits have recently concluded that allegations of harassment or hostile work environment can provide the basis for a viable retaliation claim. *See, e.g., Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 26 (1st Cir. 2002) (employer "will be liable for retaliation if it tolerates severe or pervasive harassment motivated by the plaintiff's protected conduct"); *Von Gunten v. Maryland,* 243 F.3d 858, 869–70 (4th Cir. 2001) ("[R]etaliatory harassment can constitute adverse employment action, but only if such harassment adversely affects the terms, conditions, or benefits of ... employment." (internal quotation marks and citations omitted)); *Morris v. Oldham Cty. Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000) (plaintiff may bring retaliation claim where defendant "took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor" (emphasis omitted)); *Ray v. Henderson,* 217 F.3d 1234, 1244–45 (9th Cir.2000) (retaliation-based hostile work environment is actionable); *Richardson,* 180 F.3d at 446 ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case."); *Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 886 (7th Cir.1998) ("[R]etaliation can take the form of a hostile work environment."); *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir.1998) ("[C]o-worker hostility or retaliatory harassment, if sufficiently severe, may

constitute 'adverse employment action' for the purposes of a retaliation claim."). Other Circuits, however, have not adopted such a theory. *See, e.g., Hernandez v. Crawford Bldg. Material Co., Inc.,* 321 F.3d 528, 531–32 & n. 2 (5th Cir.2003) (retaliation claim requires "ultimate employment decision" such as hiring, granting leave, discharging, or compensating); *Manning v. Metro. Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997) (alleged hostility and personal animus insufficient to support retaliation claim; retaliation claim requires "ultimate employment decision" and "material employment disadvantage").

There is much to be said for the proposition that harassment or hostile work environment allegations can be the basis for a retaliation claim. However, this Court need not resolve that issue because, even assuming that a claim for retaliatory harassment is viable, plaintiff's claim nevertheless fails on the facts. The courts that have recognized claims for retaliatory harassment almost universally require that the harassment be severe or pervasive. *See Morris,* 201 F.3d at 792; *Richardson,* 180 F.3d at 446; *Gunnell,* 152 F.3d at 1264. Some courts expressly invoke the standards for hostile work environment claims in the discrimination context. *See Ray,* 217 F.3d at 1245; *Von Gunten,* 243 F.3d at 870; *Brodetski,* 141 F.Supp.2d at 48; *Singletary,* 225 F.Supp.2d at 62. Under such standards, a workplace is "hostile" when it is " 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367); *see also Clark County School District v. Breeden,* 532 U.S. 268, 270–271,

121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The court should consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employee's performance. *Faragher v. Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). As the Supreme Court has emphasized, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* at 788, 118 S.Ct. 2275 (citations omitted). Indeed, the standards are intended to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id.* (citations omitted).

Applying these standards to plaintiff's allegations leaves no doubt that her claim must fail. To the extent that plaintiff is alleging that defendant's alleged failure to provide her with detail, training, and promotion opportunities comprises part of her hostile work environment claim, plaintiff either was not qualified for, did not apply for, was not denied, or was not treated differently than others with respect to, the opportunities upon which she focuses. *See* Section II.A.1. Consequently, plaintiff's alleged treatment with regard to these opportunities cannot provide the factual predicate for a retaliation claim (even assuming that cumulative adverse employment actions concerning promotion or training opportunities—as opposed to actual harassment—can provide a basis for a hostile work environment claim). In addition, as discussed in Section II.A.2. above, plaintiff has not established as a factual matter that she suffered a diminution in her job duties over time, much less in retaliation for her discrimination complaints. All that she has entered into the record on this point is an affidavit that is too conclusory to raise a genuine issue of material fact. *See* Bryant Aff. ¶ 10; *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir. 1993) ("[M]ere unsubstantiated allegation ... creates no 'genuine issue of fact' and will not withstand summary judgment."); *Sage v. Broad. Publ'ns, Inc.,* 997 F.Supp. 49, 53 (D.D.C.1998) ("Conclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue of material fact.").

Many of plaintiff's other allegations fail because plaintiff has not demonstrated either that she was treated differently than employees outside the protected classes or that defendant is liable for the conduct at issue. For example, plaintiff complains that when she would meet with Howell in her office, Howell would take telephone calls in plaintiff's presence. Compl. ¶ 19. Yet plaintiff's white co-workers also suffered such telephone interruptions. *See* Def.'s Mot., Ex. 1 at 1669, Ex. 3 at 1484–1485. Plaintiff alleges that Norman returned her work for "nitpicking" reasons. Compl. ¶ 23. But plaintiff's co-workers of other races confirmed that they too were subjected to Norman's propensity for making revisions. *See* Def.s' Mot., Ex. 1 at 1672; Ex. 2 at 1614–15. Plaintiff also complains that her lumbar support pillow was hidden from her, that her business cards were stolen, and that her computer was tampered with. Compl. ¶¶ 25(12), 25(18), 33. But plaintiff has no basis for holding defendant responsible for these thefts or pranks, which could even have been caused by outsiders. Moreover, plaintiff concedes that other employees also complained of similar problems with their computers. *See* Def.'s Mot., Ex. 26 at 2109. Plaintiff highlights the alleged racially-motivated conduct by Todd Waldham and Lisa Ng. However, as noted above, defendant cannot be held liable for

this conduct because plaintiff either did not apprise her supervisors of the discriminatory nature of the conduct or her supervisors handled plaintiff's complaints appropriately. *See* Section II.B.

Plaintiff's various allegations concerning defendant's alleged efforts to impede her ability to obtain relief on her administrative complaints also fail to provide the basis for a claim. For example, although plaintiff complains that she was given a "huge stack of assignments" when she was trying to prepare for mediation of her complaint, and that she was not allowed adequate leave time to prepare for her fact-finding conference, Compl. ¶ 27, plaintiff concedes that she was ultimately given two days to prepare for each of these events, *see id.*—an amount of time that would appear to be sufficient. Moreover, although plaintiff claims that management did not act in good faith during mediation of her complaint and in fact reneged on a settlement offer, *see id.* ¶ 26, plaintiff has cited no authority for the odd proposition that a defendant must settle discrimination complaints on terms acceptable to the complainant. *See* Pl.'s Mem., Ex. 10 at 1198–99 (plaintiff conceding that she declined an offer made to her by management). Plaintiff similarly argues that she was not allowed to have a representative present during meetings in Norman's office following plaintiff's complaints. *See* Compl. ¶ 25(15). But plaintiff does not identify any support for the proposition that she was entitled to this accommodation. *See* Pl.'s Ex. 9 at 910 (plaintiff conceding that the failure to provide her with a representative "couldn't be harassment technically because … the regulation or whatever is saying that I'm not entitled to one if a supervisor is going to discuss job-related issues, job performance or counseling").

Most of the remaining alleged instances of harassment can best be characterized as "ordinary tribulations of the workplace" that are not actionable. *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. Plaintiff complains, for instance: that she was criticized for not completing assignments more promptly; that her name was listed last on group emails; that her supervisor told her that it was common courtesy to give advance notice of leave that would be taken; that her supervisor took 17 days to send out her workmen's compensation forms; that she was subjected to gossip; and that her supervisor singled her out for a special meeting and inferred that she was a difficult person with whom to work. *See* Compl. ¶¶ 19(3), 22, 25(3), 25(10), 25(13), 25(14), 29(6). But of course Title VII is not a "general civility code," *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275, and "many bosses are harsh, unjust, and rude," *Alfano*, 294 F.3d at 377. The incidents of which plaintiff complains are too mild and too common in many workplaces to constitute "an abusive working environment" that provides a basis for a Title VII claim. *See Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275; *Oncale*, 523 U.S. at 78, 118 S.Ct. 998.

Plaintiff's most serious allegation is that, after she filed her first discrimination complaint, her white co-workers and supervisor Howell stopped speaking with her. *Cf. Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir.1999) (jury could find in favor of plaintiff on retaliation claim based on evidence that "the other employees were instructed by management not to talk to [plaintiff], go into his area or otherwise interact with him."). But the record indicates that plaintiff herself was complicit in this breakdown of communication, as she declined to speak with others. *See* Def.'s Mot., Ex. 1 at 1627–29, Ex. 2 at 1571–72; Pl.'s Mem., Ex. 4 at 52. Indeed, plaintiff

states in her complaint that she stopped speaking with Howell following the first discrimination complaint. Compl. ¶ 20. Moreover, plaintiff acknowledges that she and Howell did not cease communicating altogether, but rather maintained contact through emails. *See id.* Perhaps most importantly, plaintiff concedes in her complaint that Howell avoided all verbal communication with her even before she filed her first discrimination complaint in February 1998—thus directly contradicting plaintiff's statement in her affidavit that Howell stopped speaking with her only afterwards. *Compare id.* ¶¶ 19, 19(1), *with* Bryant Aff.¶ 10; *see also* Bryant Aff. ¶ 11 (Howell "avoid[ed] ... any contact with plaintiff from the time she came to the COE in November 1993 until July 1998."). Plaintiff's concession that the ostracism preceded plaintiff's protected activity is fatal to her retaliation claim as it undercuts proof of causation. *See Brody,* 199 F.3d at 452 (plaintiff must show causal link between adverse employment action and protected activity); *Roberts v. Segal Co.,* 125 F.Supp.2d 545, 550 (D.D.C.2000) ("Given plaintiff's admission that the offensive behavior preceded her October 3 complaint of race discrimination, it is illogical to conclude that there was a causal connection between the alleged retaliation and her protected activity."); *Batson v. Powell,* 912 F.Supp. at 576 (no inference of causation where same alleged harassment and hostile work environment existed prior to plaintiff's protected activity).

In any event, numerous courts have held that shunning or ostracism by co-workers and supervisors is insufficient to sustain a retaliation claim. *See Williams v. City of Kansas City,* 223 F.3d 749, 754 (8th Cir. 2000) (supervisor's "silent treatment is at most ostracism, which does not rise to the level of an actionable adverse employment action"); *Ray,* 217 F.3d at 1241 (" '[M]ere ostracism' by co-workers does not constitute an adverse employment action." (citation omitted)); *Drake,* 134 F.3d at 886 (terms and conditions of plaintiff's employment were not affected by co-workers' shunning); *Ball v. Tanoue,* 133 F.Supp.2d 84, 90 (D.D.C.2001) (ostracism by co-workers "does not constitute a materially adverse consequence or disadvantage in the terms and conditions of [plaintiff's] employment so as to establish an adverse personnel action"); *Segal Co.,* 125 F.Supp.2d at 549 (same).

■■■■ Overall, taking plaintiff's various allegations together, plaintiff has failed to establish the existence of a workplace " 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Oncale,* 523 U.S. at 78, 118 S.Ct. 998 (citation omitted). Although plaintiff may have subjectively felt harassed by defendant, the evidence does not substantiate the presence of "extreme" conduct that "amount[s] to a change in the terms and conditions of employment." *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275.[13] Accordingly,

**13.** Although plaintiff does not separately state a claim for constructive discharge in her complaint, her brief indicates that she wishes to pursue such a claim. To establish a claim for constructive discharge, plaintiff would have to show that her employer " 'deliberately made working conditions intolerable and drove her into an involuntary resignation.' " *Crenshaw v. Georgetown Univ.,* 23 F.Supp.2d 11, 19 (D.D.C.1998) (quoting *Downey v. Isaac,* 622 F.Supp. 1125, 1132 (D.D.C.1985)). Because plaintiff has not even demonstrated that she was subjected to a hostile work environment or any other actionable adverse employment action, she cannot show the type of "intolerable" working conditions necessary to sustain a constructive discharge claim.

plaintiff's claim for retaliatory hostile work environment fails.

## CONCLUSION

Plaintiff has not identified a specific alleged adverse employment action that could provide a basis for her claims for discrimination or retaliation. Her discriminatory and retaliatory hostile work environment claims fail because she has not demonstrated the existence of severe or pervasive harassment sufficient to alter the conditions of her employment and create an abusive working environment. Her discriminatory hostile work environment claim also fails for the additional reason that she has not demonstrated that she was harassed on the basis of her race, color, or age. There are no genuine issues of material fact precluding the entry of summary judgment for defendant on each of plaintiff's claims. Accordingly, defendant is entitled to judgment as a matter of law.

A separate order has been issued on this date.

## *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment, or in the Alternative, to Dismiss, in Part, the hearing on July 30, 2002, and the entire record, it is, for the reasons set forth in the Memorandum Opinion issued on this date, hereby ORDERED that the motion is GRANTED. JUDGMENT shall be entered in favor of defendant on all of plaintiff's claims.