Larrette L. ANDERSON, Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

No. 00–0206 (RJL).

United States District Court, District of Columbia.

Sept. 29, 2003.

Larrette Anderson, Fort Washington, MD, pro se.

Melissa Barbara Rogers, National Railroad Passenger Corporation, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Plaintiff Larrette Anderson, proceeding *pro se*, sought review of defendant National Railroad Passenger Corporation's ("Amtrak's") decision to terminate her employment and to refuse her reinstatement. Currently before the Court is the defendant's motion for summary judgment. Upon consideration of the defendant's motion, the opposition thereto, the entire record and the relevant law, the Court grants the defendant's motion.

### I. Background

Ms. Anderson, an African–American employee of Amtrak for the past thirteen years, was terminated by Amtrak due to her illegal use of a passenger's credit card left behind in the train. Compl. ¶ 4. The complaint indicates that Ms. Anderson never disputed that she committed the fraud or that she was being disciplined because of the fraud.[1] Amtrak terminated Ms. Anderson and refused to reinstate her after a full investigative hearing because the company believed that she had violated the trust expected of an employee. Letter from Thomas to McMillan of 8/25/97, at 2. Amtrak's decision not to reinstate Ms. Anderson was based on a "pattern of deceit" that included (1) her denial of the offense "when first confronted," and (2) her unwillingness to return all of the stolen merchandise after she had confessed to committing the offense. National Railroad Passenger Corporation (Amtrak), 35 Public Law Board No. 5808 (1997) (Deinhardt, Arb.).[2]

By comparison, a fellow Amtrak employee who found the credit card and gave it to Ms. Anderson to use was terminated but later reinstated because he (1) "turned himself in to Amtrak Police the day after the offense," and (2) returned the stolen merchandise almost immediately. Pl.'s Opp'n to Def.'s Mot. Supp. Summ. J. ¶ 1; National Railroad Passenger Corporation (Amtrak), 36 Public Law Board No. 5808 (1997) (Deinhardt, Arb.).

Defendant Amtrak moves for summary judgment based on Ms. Anderson's testimony that she believed Amtrak's alleged discrimination was gender motivated and not race motivated. Def.'s Mot. Supp. Summ. J. ¶ 1. Defendant claims that gender discrimination does not violate 42 U.S.C. § 1981, which would result in the plaintiff not having a claim. *Id.* This Court ordered plaintiff Anderson to respond to defendant's motion by November 4, 2002. In her response from that date, Ms. Anderson did not address the change in her testimony but merely reiterated that she believed it to be unfair that her coworker, an African–American male, was reinstated to his position of employment while she was not. Pl.'s Opp'n ¶ 1.

### II. Discussion

#### A. *Summary Judgment Standard*

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Ca-*

---

1. Plaintiff had no prior disciplinary record with defendant before the credit card incident.

2. Ultimately she returned the bulk of the items after being confronted a week later.

*trett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). The court must view the facts in the light most favorable to the non-movant, "giving the non-movant the benefit of all reasonable inferences derived from the evidence in the record." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B.   McDonnell Douglas *Framework*

Ms. Anderson brings her claim under 42 U.S.C. § 1981, complaining that she is the victim of racial discrimination because she received "harsher discipline than similarly situated white employees of defendant who engaged in similar or worse conduct." Compl. ¶ 5. Amtrak has moved for summary judgment because, notwithstanding what she stated in her complaint, Ms. Anderson's testimony indicates that she believes she is the victim of gender discrimination, which does not violate section 1981. Def.'s Mot. Supp. Summ. J. ¶ 1. The Court nevertheless must evaluate her claim liberally and consider it as one based on race. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating that courts must construe *pro se* filings liberally); *Richardson v. U.S.*, 193 F.3d 545, 548 (D.C.Cir.1999) (discussing

that a *pro se* complaint should be considered in its totality so as to permit the claim to proceed); *see* Compl. ¶ 5 ("Plaintiff was the victim of discrimination against him [sic] because of her race.").[3]

In evaluating racial discrimination cases under 42 U.S.C. § 1981, courts use the same three-step *McDonnell Douglas* framework used for evaluating claims of racial discrimination under Title VII. *Carney v. The American University*, 151 F.3d 1090 (D.C.Cir.1998); *Bryant v. R.L. Brownlee*, 265 F.Supp.2d 52, 58 (D.D.C. 2003). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To meet this burden of proof, the plaintiff must show that she is a member of a protected class, that she has suffered an adverse employment action, and that the adverse action gives rise to an inference of discrimination. *Id.; Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). If the plaintiff can successfully establish a prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer is able to produce such a reason, the plaintiff must demonstrate that the employer's reason for action was merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817. Although Ms. Anderson has established a prima facie case of discrimination,[4] defen-

---

**3.** To the extent that the plaintiff is claiming gender discrimination, the defendant is correct that any such claim cannot be brought under section 1981. *Wesley v. Howard Univ.*, 3 F.Supp.2d 1, 3 (D.D.C.1998); *see also Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

**4.** Ms. Anderson satisfies the first two requirements of the *McDonnell Douglas* test because she is African–American and because she was discharged from her position and denied reinstatement. Ms. Anderson also satisfies the third requirement of the test because she provides enough evidence to create an inference of discrimination as outlined in *Stella v. Mine-*

dant Amtrak had nondiscriminatory reasons for her discharge that are not a pretext for discrimination. Therefore, for the following reasons, the Court grants the defendant's motion for summary judgment.

### C. Plaintiff's Failure to Demonstrate a Pretext of Discrimination

While Ms. Anderson provides sufficient evidence of a prima facie case of racial discrimination, she fails to demonstrate that Amtrak's nondiscriminatory reason for terminating her employment was merely a pretext for discrimination. Here, Amtrak has purported to discharge and to refuse reinstatement of Ms. Anderson because of her fraudulent use of the lost credit card. Compl. ¶ 4; Letter from Walker to Anderson of 2/5/97, at 3. The time frame supports this claim. Ms. Anderson used the credit card on January 2, 1997, and Amtrak notified her of its decision to terminate her employment on February 5, 1997. Letter from Thomas to McMillan of 8/25/97, at 1; Letter from Walker to Anderson of 2/5/97, at 3. Ms. Anderson's fraudulent use of a credit card constitutes a "legitimate, nondiscriminatory reason" for her dismissal and Amtrak's refusal to reinstate her as a coach cleaner.

Once Amtrak produces a legitimate and nondiscriminatory reason for Ms. Anderson's dismissal and its refusal to reinstate her, the burden of proof shifts back to Ms. Anderson, who must demonstrate that the legitimate and nondiscriminatory reason for Amtrak's actions was merely a "pretext" for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Ms. Anderson does not produce sufficient evidence that Amtrak's actions were merely a pretext for racial discrimination. Indeed, Ms. Anderson does not complain of other discriminatory events in her thirteen years of employment and she does not complain of a hostile work environment. Compl. ¶ 5. Amtrak dismissed her one month after her illegal use of the card and allowed her to proceed through an investigatory process in which the arbitration board found that Ms. Anderson gave the credit card to an acquaintance for that person's use, in addition to her own usage of the credit card. Letter from Thomas to McMillan of 8/25/97, at 1; Letter from Walker to Anderson of 2/5/97, at 3. That hearing revealed a pattern of conduct which Amtrak reasonably concluded was contrary to reinstatement (e.g., failure to accept responsibility and return illegal purchases). National Railroad Passenger Corporation (Amtrak), 35 Public Law Board No. 5808 (1997) (Deinhardt, Arb.). In stark contrast, the Board reasonably found that her fellow employee had responded to the situation in a manner that warranted reinstatement (e.g., turning himself in to the authorities and returning the illegally purchased items). *Id.* Simply stated, Ms. Anderson has not presented any evidence to prove that Amtrak's actions were a pretext for racial discrimination (or gender discrimination for that

---

ta. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C.Cir.2002); *see Powell v. Washington Metropolitan Area Transit Authority*, 238 F.Supp.2d 160, 165 (D.D.C.2002) (citing examples of sufficient evidence, including documentation of qualifications and defendant's pursuance of other equally qualified applicants).

Ms. Anderson has presented letters from her union representative, Michael McMillan, stating names of white employees who com-

mitted offenses and were nonetheless reinstated by Amtrak. Letter from McMillan to Blair of 5/15/97, at 1. She has also provided evidence of overcoming her drug and alcohol problem, which she claims was one reason why she committed the credit card fraud. Pl.'s Opp'n ¶ 1. Ms. Anderson is certainly qualified for the job given that she had worked in the position previously and was an employee of Amtrak for thirteen years. Compl. ¶ 4.

matter). In fact, the evidence clearly demonstrates that Amtrak's actions were based on her fraudulent use of a credit card and her subsequent conduct during the investigative phase.

### III. Order

For all of the above stated reasons, it is on this 29th day of September, 2003, hereby

**ORDERED** that defendant's motion for summary judgment [# 11] is granted;

**SO ORDERED.**